STATE of Oklahoma ex rel. OKLAHOMA
BAR ASSOCIATION, Complainant,

v.

James Craig DODD, Respondent.

OBAD No. 1072.
SCBD No. 3854.

Supreme Court of Oklahoma.

July 12, 1994.

John E. Douglas, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Stephen Jones, Jones & Wyatt, Enid, for respondent.

HARGRAVE, Justice.

Respondent James Craig Dodd was charged with violating then-effective Code of Professional Responsibility, 5 O.S. Ch. 1, App. 3 (1981), DR 5–104(A), DR 5–107(A) and DR 4–101(A). In approximately 1982, Respondent began representing Herb, Jr. and Jean Stange on an oil and gas matter. That matter having been concluded successfully, Respondent instituted an action on the Stange Jr.'s behalf. In November 1983, Herb Stange Jr. introduced Respondent to his parents, Herb Sr. and May Stange, who were in their seventies and were desirous of having some estate planning done. Over the next several years, Respondent conducted various matters for both Stange families, including placing some investments for the elder Stanges with E.F. Hutton brokerage firm, and also became personal friends with them.

The oil and gas case that Respondent undertook for the Stanges Jr. was set for trial in February, 1986. In January, 1986, the Stanges Jr. owed Respondent approximately $65,000.00 in unpaid legal fees and expenses and had advised him that they were unable to pay. Without telling the Stanges, Jr., Respondent on January 13, 1986 approached the Stanges Sr. at their home to discuss the Stange Jr.'s unpaid legal fees and expenses. Respondent requested the Stanges Sr. to advance the expenses, or a portion thereof, in order to enable him to get the case to trial because of large expenses that were arising. It appears that, through liquidation of their E.F. Hutton accounts, cash advanced and monies on deposit in the Respondent's trust account, the Stanges Sr. transferred $82,-

193.15 to cover the Herb Jr. and Jean Stanges' bills. The Respondent contends that these amounts were transferred to him as a loan, and that if the case was unsuccessful, he would bear the risk. No promissory note or other evidence of this indebtedness was signed by the Respondent until 1987. The understanding was that when Respondent received his attorney's fee from the Stange Jr. lawsuit he would repay Herb Sr. and May Stange.

The Stange Jr. lawsuit was concluded and an award of $315,000.00 compensatory and $300,000.00 punitive damages was given, of which $315,000.00 was collected in July, 1987. In the meantime, Respondent had the opportunity to take on some large plaintiffs' cases that would involve a great deal of cash outlay on his part. He estimated that he would need approximately $170,000.00 and he attempted to borrow $90,000.00 from an Enid bank. Also, he approached the Stanges Sr. in June, 1987, about making him a loan. He testified that they had become close personal friends and that he explained to them his business hopes and plans and explained to them the opportunities facing him in his law practice and the attendant expenditures of large sums of money. He testified that he later explained to the Stanges that he was unable to get the bank loan that he needed. All this he knew before he received the approximately $140,000.00 attorney fee from the Stanges Jr. case, which he did not use to pay the Stanges Sr. He explained that because he could not get the bank loan, he needed all of the money and that that was the reason the Stanges' Sr. agreed to loan him the additional sum of money.

The additional sum loaned by the Stanges' Sr. was $104,000.00, for which Respondent and his wife on June 29, 1987 signed a handwritten "promissory note" drafted by Respondent that provided for an interest rate of 12%, a term of one year and had Respondent's home, Respondent's parents' home and Respondent's airplane as collateral. On September 3, 1987, Respondent rewrote the handwritten note to include the sums previously advanced by the Stanges' Sr. for the Stanges' Jr. legal fees, for a total sum of $188,000.00 due August 12, 1988, at 12% in-

terest. The collateral was second mortgages on real estate, including: Respondent's home, Respondent's parents' home and a lot owned by Respondent and his wife in Enid. The plane did not appear as collateral on the second note, nor did the vacant lot appear on the first note. The Bar offered evidence of a title search showing that at the time the note was given the Stanges' mortgage would have been a third mortgage against Respondent's home, a second mortgage against his parents' home and a second mortgage against the vacant lot.

Respondent testified that he had mortgages prepared, and delivered them to the Stanges' Sr. at their home at the time the second note was signed and that he instructed them to send the mortgages for recording. The mortgages were not recorded and things began to break down between the Stanges and Dodd, apparently when Herb Stange discovered this. Upon learning from Mrs. Stange Sr. that the mortgages had not been filed of record, Dodd immediately prepared new mortgages and had them filed of record. He testified that no intervening encumbrances against the property had been incurred during that time.

Subsequently Respondent suffered business difficulties, which he attributes to a federal court sanction that was later reversed by the Tenth Circuit, and was unable to repay the loan by August 12, 1988. Since 1989, Respondent has made assignments of attorneys' liens in certain of his cases to the Stanges Sr. The Trial Panel found that as of February, 1991, the Respondent had made payments of $105,000.00 to the Stanges, Sr. Respondent testified that this entire payment represented interest on the obligation, so that the principal amount of $188,000.00 is still due and owing to the Stanges Sr. Respondent also named the Stanges Sr. as beneficiaries of a $250,000.00 life insurance policy on his life and assigned them security interests in his office furnishings, equipment, etc.

The Trial Panel's conclusions of law were: that Respondent violated DR 4–101 in seeking loans from the Stanges, Sr. for the Stanges, Jr.'s legal bills without first asking the Stanges, Jr. for their consent, and that

Respondent violated DR 5–104 by not advising the Stanges, Sr. to obtain another attorney to represent them in the business transactions he had with them and in not properly documenting the various transactions so as properly to secure the Stanges Sr.'s interests. DR 4–101 provided in part:

(A) " 'Confidence' refers to information protected by the attorney-client privilege under applicable law, and 'secret' refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client."

(B) "... a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

\* \* \* \* \* \*

(3) Use a confidence or secret of his client for the advantage of himself ... unless the client consents after full disclosure."

We find that Respondent's actions in seeking a loan from the parents of his client to pay the client's legal fees, without informing the client, violated the client's secrets to Respondent's advantage. Respondent's actions did not fall within DR 4–101(C) which provides that a lawyer may reveal confidences or secrets necessary to establish or collect his fee or to defend himself or his employees or associates against an accusation of wrongful conduct.

The critical issue in the loan transaction between Respondent and the Stanges, Sr. in determining whether Respondent violated DR 5–104(A) is whether the client consented after full disclosure. DR 5–104(A) provided:

"A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his profession-

al judgment therein for the protection of the client, unless the client has consented after full disclosure."

Although DR 5–104(A) did not state that the client must be instructed to seek independent counsel, part of the violation found by the Trial Panel against Respondent, the current Rules of Professional Conduct, Rule 1.8, specify more clearly the protections for the client, including opportunity for independent legal advice and written consent after disclosure.[1] Courts that have considered loan transactions between attorney and client have found violation of DR 5–104(A) where it was assumed that the lawyer and client had differing interests and that the client expected the attorney to exercise his professional judgment for the protection of the client. The exception to this, where the client has consented after full disclosure, means the type of advice that a prudent lawyer would be expected to give the client if the client consulted the lawyer regarding such a loan to a third person. *In re Conduct of Montgomery,* 292 Or. 796, 643 P.2d 338, 342–43 (1982); *In re: Bartlett,* 283 Or. 487, 584 P.2d 296 (1978). "Differing Interests" was defined in the Code of Professional Responsibility as including every interest that will adversely affect either the judgment or loyalty of a lawyer to a client, whether it be conflicting, inconsistent, diverse or other interest.

Dodd testified that he did not advise the Stanges to seek independent advice. He did not supply them with his financial statement. He testified that the primary reason, he felt, that the Stanges loaned him the money was because they liked him. We find that Dodd's testimony reflects that his dealings with the Stanges in the loan transaction were not at arms-length and were not in the best interests of the clients.

It is clear that the Stanges expected Dodd to exercise his professional judgment on their

---

1. Rule 1.8 of the 1988 Rules of Professional Conduct provides:

"(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and rea-

sonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto."

behalf and that their interests were different from Dodd's. Dodd claims that he disclosed to the Stanges the risks inherent in his practice of law and discussed with them the possibility that the loans could not be repaid. We only have Dodd's testimony that he fully disclosed the risks because, as noted in the Trial Panel's finding of fact No. 16, the Stanges Sr. are so far advanced in years that their recollections of events were not very helpful to the panel. The Stanges Sr., are now in their eighties and reside in a nursing home. They appear to recall little about their relationship with Respondent and have difficulty recalling the details of the transactions. Their primary recollection is that Respondent did not repay the money. The Stanges Sr. through the assistance of their son, Joe, hired another attorney to attempt to recover the money owed.

From the testimony as to the course of Dodd's representation of the Stanges, Sr., it is apparent that they reposed great trust and confidence in Respondent and turned over great responsibility to him. They put their savings at his disposal for investment and had statements sent to him as well as to themselves. We cannot find that Respondent had the best interests of the Stanges, Sr. in mind when he persuaded them to loan him $104,000.00 in addition to the previous loan of some $82,000.00 for the Stanges, Jr.'s legal fees. Nor can we find that Respondent gave the Stanges Sr. the kind of independent advice required if they had sought his advice about making such loans to a third party. The collateral that Respondent gave the Stanges consisted of a third mortgage on his home and a second mortgage on two other properties. Respondent had been unable to borrow from the bank in Enid, so he borrowed the money from his elderly clients whom he knew to have considerable savings. Further, Respondent's actions placed his elderly clients in financial jeopardy. The Stange's son testified that because of Respondent's failure to repay, the Stanges, Sr. have had to use funds from the corpus of their retirement funds to support themselves in the nursing home.

The Comment to current Rule 1.8, Rules of Professional Conduct, states that as a general principle, all transactions between client and lawyer should be fair and reasonable to the client. In such transactions, a review by independent counsel on behalf of the client is often advisable. Furthermore, a lawyer may not exploit information relating to the representation to the client's disadvantage. If effectuation of a substantial gift requires preparing a legal instrument such as a will or conveyance, the client should have the detached advice that another lawyer can provide.

We find that Dodd's actions violated DR 5–104 by his failure to adequately protect his client's interests by fully disclosing to them the risks inherent in the transaction and in inadequately securing their interests. It is clear that the Stanges Sr. relied upon Respondent's advice and recommendations and trusted him to keep his word. We also find that Dodd violated DR 4–101(A) by obtaining a loan from his client's parents to pay client's legal fees, without informing the client.

The Bar Association's complaint also charged Respondent with violating DR 5–107(A) which provided that, except with the consent of the client after full disclosure, a lawyer shall not accept compensation for his legal services from one other than his client. The Trial Panel did not find a violation of that section and we do not. Dodd's testimony and his subsequent treatment of the monies received from the Stanges, Sr. for the Stanges, Jr.'s legal fees was that the money was a loan.

The Trial Panel's recommended discipline was based upon their belief that repayment of the money was the primary objective. Accordingly, having noted that Respondent had no prior disciplinary action imposed against him by the OBA, the Trial Panel recommended: a) imposition of a private reprimand provided the monies owed by Respondent are repaid within six (6) months; b) imposition of a public reprimand provided the monies owed by Respondent are repaid within one (1) year; c) suspension of thirty (30) days provided the monies owed by Respondent to the Stanges, Sr. are repaid within one and one-half (1½) years; d) additional suspension of sixty (60) days, for a total of ninety (90) days, provided the monies owed by the Respondent to the Stanges, Sr. are repaid within two (2) years; e) additional

suspension of ninety (90) days, for a total of one hundred eighty (180) days, provided the monies owed by Respondent to the Stanges, Sr. are repaid within two and one-half (2½) years.

The Trial Panel recommends that Respondent be subject to probation during the period of time for which the obligation remains unpaid and that he report monthly to the General Counsel the status of his repayment of the obligation. Further, the panel recommended by a vote of two to one that Respondent should be prohibited from borrowing money from any of his clients under any circumstances whatsoever.

We look with disfavor upon an attorney's not repaying a loan from his clients, and we agree with the Trial Panel that expeditious repayment of the money to the Stanges Sr. is of primary concern. However, the violation charged is failure to properly disclose to the client and we feel that Dodd's *discipline* should not be tied to his ability to repay the loan. Dodd admits that he owes the entire amount of principal and also recognizes that the $105,000.00 paid to date was payment of interest.

After *de novo* review, we find that the Respondent violated DR 5–104 and 4–101 and order that the Respondent be suspended from the practice of law for a period of ninety (90) days from the date of this opinion. The Bar has filed an application to assess costs against Respondent pursuant to Rules 6.13 and 6.16., Rules Governing Disciplinary Procedure. Respondent is ordered to pay costs in the amount of $5,096.56 within thirty days of the date of this opinion.

RESPONDENT JAMES CRAIG DODD IS SUSPENDED FROM THE PRACTICE OF LAW FOR A PERIOD OF NINETY DAYS (90) DAYS FROM THE DATE OF THIS OPINION; RESPONDENT ORDERED TO PAY COSTS.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, KAUGER and WATT, JJ., concur.

ALMA WILSON and SUMMERS, JJ., concur in part; dissent in part.