STATE of Oklahoma ex rel., OKLA-
HOMA BAR ASSOCIATION,
Complainant,

v.

Tom CROSS, Respondent.

OBAD No. 1249.
SCBD No. 4162.

Supreme Court of Oklahoma.

Dec. 17, 1996.

As Corrected Dec. 18, 1996.

Mike Speegle, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

Tom L. Cross, Oklahoma City, Pro Se.

SIMMS, Justice.

Complainant, Oklahoma Bar Association, instituted disciplinary proceedings against Respondent, Tom L. Cross, for violations of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.1991, ch. 1, app. 3–A. The Professional Responsibility Tribunal heard evidence on the allegations and concluded that Respondent violated Rules 1.8(a) and (b) of the ORPC. The trial panel recommended suspension from the practice of law for eighteen (18) months as the appropriate discipline. Upon *de novo* review[1], we find Respondent violated Rules 1.8(a) and (b) and his professional misconduct warrants suspen-

---

1. In attorney disciplinary cases, this Court does not review the findings of the Professional Responsibility Tribunal, but rather, conducts a *de novo* review of the entire record and makes its own determination based upon that review. *State ex rel. Oklahoma Bar Ass'n v. Miskovsky,* 832 P.2d 814 (1992).

sion from the practice of law for a period of eighteen (18) months. The facts follow.

Respondent is a certified public accountant as well as a licensed attorney in this State. Upon taking an associate position with a Kingfisher law firm, Respondent and his wife rented a house from Ruby Jo Carpenter. He also performed legal services and prepared income tax returns for Mrs. Carpenter. After about one-year of renting from Mrs. Carpenter, Respondent and his wife purchased the house from Mrs. Carpenter for $120,000.00. Respondent drafted all of the purchase documents including the promissory note, mortgage and amortization schedule. He further filed the documents with the County Clerk. Shortly thereafter, he approached Mrs. Carpenter about loaning an additional $25,000.00 to him to be secured by the mortgage on the house. He claims that Mrs. Carpenter agreed to loan him the money as long as the agreement was not made public. Respondent asserts that he informed Mrs. Carpenter that if he filed any papers which documented the loan then it would be public but that if he did not file documentation on the loan then her note to him would not be secured. Thus, the parties executed another promissory note on the $25,000.00 to be secured by the first mortgage. However, nothing was filed in the public records, and the note was unsecured. In addition, at no time during this loan transaction did Respondent advise his client to seek independent legal counsel to protect her interests.

Subsequent to the second loan, Respondent and his wife were divorced. The house was sold, the first promissory note paid off and the remaining equity was applied to other debts owed by Respondent. None of the proceeds went towards retirement of the $25,000.00 debt except for that month's payment. In fact, Respondent asserted that Mrs. Carpenter told him to go ahead and keep the proceeds from the sale of the house. Shortly thereafter, Respondent was terminated by the law firm. He attempted to continue paying off the note but after losing his job, he could no longer make any payments and filed for bankruptcy.

In the bankruptcy proceeding, Mrs. Carpenter objected to the discharge of the remaining $17,893.73 plus interest on the $25,000.00 debt. The bankruptcy court conducted a hearing on the objection, and Mrs. Carpenter testified. Her testimony coincided with the above facts except that she stated that she trusted Respondent as her lawyer to take the necessary steps to secure the loan and did not know it was unsecured until Respondent filed for bankruptcy.[2]

The bankruptcy court held that Respondent committed a defalcation while acting in a fiduciary capacity in regards to Mrs. Carpenter and defined a defalcation as "the misappropriation of funds entrusted to the fiduciary." As a result of the defalcation, the loan from Mrs. Carpenter was excepted from bankruptcy discharge.

To Respondent's credit, we note that he acknowledges his responsibility to pay Mrs. Carpenter the remaining debt. However, he offered no payment plan into evidence. In addition, filing for bankruptcy does not to this Court evidence a true intent to pay back one's debts, especially where those debts were incurred under circumstances evidencing professional misconduct.

Respondent's only explanation for his actions was that he was attempting to fulfill Mrs. Carpenter's desire to keep the transaction confidential. He admits that he was acting in a fiduciary capacity during the period when these transactions with Mrs Carpenter occurred. He further agrees that with regard to the $25,000.00 loan his actions went "beyond the bounds of professional propriety" and that he violated Rules 1.8(a) and 1.8(b) of the ORPC.

Rule 1.8(a) provides:

"(a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and

---

2. Mrs. Carpenter's testimony before the bankruptcy court was admitted as evidence in this disciplinary proceeding in lieu of testimony before the tribunal.

are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto."

This rule contemplates situations such as the one before us where an attorney enters into a transaction with a client who trusts the attorney to advise them fully regarding the transaction. As long as the transaction works out, everybody is happy. However, if the business deal, or in this case, the loan, goes sour, then the client loses trust in her lawyer and the reputation of the legal profession is tarnished. We have seen this occur in *State ex rel. Oklahoma Bar Ass'n v. McKenzie*, 788 P.2d 1370 (Okla.1989) and *State ex rel. Oklahoma Bar Ass'n v. Dodd*, 895 P.2d 688 (Okla.1994).

In *McKenzie*, the attorney had invested substantially in a business venture that was floundering. He encouraged his client to invest a very significant sum of money in the venture as well. The business venture failed and the client suffered financial loss. We concluded the attorney had committed professional misconduct warranting disbarment. In doing so, we approved of the trial panel's report which stated:

"A fiduciary relationship was clearly established between the [attorney and client], springing from an attitude of trust, confidence, and superior knowledge arising from the attorney-client relationship.... The relationship of attorney and client is one of special trust and confidence. It requires that an attorney act toward his client with utmost good faith and fidelity and that all dealings with his client, must be fair, just and equitable, which is not the case here." 788 P.2d at 1378–379.

Likewise, in the case at bar, Respondent was acting as Mrs. Carpenters accountant and attorney. A relationship of trust was established which required Respondent to use utmost good faith towards Mrs. Carpenter and make sure her interests were protected in the transaction with him. A conflict of interest in violation of Rule 1.8(a) is clearly evident in this case.

In *Dodd*, the attorney obtained a loan from the parents of one of his clients in order to cover the costs of the client's litigation. He also did some work for the parents and became acquainted with their financial situation. When the attorney took on some large plaintiffs' cases which would require a large outlay of cash on his part, he again turned to these clients for a loan. The loans were to be secured with second and third mortgages on several properties. However, the mortgages were never recorded and the attorney began having financial struggles. By the time of the bar proceeding, he had managed only to repay the interest on the loans. Although the attorney had taken steps to secure the loans after the fact, i.e. assigning security interests in his office furnishings and equipment to the clients and naming them as beneficiaries on his life insurance policy, we concluded the attorney committed misconduct by failing to adequately protect the interests of his clients and advising them to seek independent legal counsel.

In the case at bar, Respondent also failed to adequately protect his client's interest and failed to advise his client to seek independent legal counsel. In addition, having prepared Mrs. Carpenter's tax returns, Respondent knew about all of her assets. He was aware of her financial position and used this knowledge to approach her about loaning him some money. These actions evidence a violation of Rule 1.8(b) of the ORPC which reads:

"(b) A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation, except as permitted or required by Rule 1.6 or Rule 3.3."

■ After *de novo* review, we find Complainant has established by clear and convincing evidence that Respondent violated Rule 1.8(a) and (b). We deem appropriate discipline for this professional misconduct to be suspension from the practice of law for a period of Eighteen (18) Months from the date this opinion becomes final. Complainant has filed an application to assess costs

against Respondent pursuant to Rules 6.13 and 6.16 of the Rules Governing Disciplinary Proceedings, 5 O.S.1991, ch. 1, app. 1–A. Respondent is ordered to pay costs in the amount of $834.58 within thirty (30) days of the date of this opinion.

RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR A PERIOD OF EIGHTEEN (18) MONTHS FROM THE DATE THIS OPINION BECOMES FINAL; AND ORDERED TO PAY COSTS OF THIS PROCEEDING.

ALMA WILSON, C.J., KAUGER, V.C.J., and HODGES, LAVENDER, HARGRAVE, SUMMERS and WATT, JJ., concur.

OPALA, J., concurring in part, dissenting in part:

I would suspend the Respondent for Two (2) Years and One (1) Day.