2007 OK 18

**STATE ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Hershel L. FRANKLIN, Respondent.**

**SCBD No. 4861.**

Supreme Court of Oklahoma.

April 3, 2007.

Rehearing Denied June 25, 2007.

Loraine Dilinder Farabow, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

R.P. Bob Moore, Oklahoma City, OK, for Respondent.

HARGRAVE, J.

¶ 1 The Complainant, Oklahoma Bar Association (Bar Association/General Counsel), has charged the Respondent, Hershel L. Franklin, with a violation of Rules 1.1 [1], 1.3 [2], 1.5 [3], 1.8 [4], 1.15 [5], and Rule 8.4 [6] of the Rules

**1.** Rule 1.1 Competence: A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation. 5 O.S.2001, Ch, 1 App. 3–A Rule 1.1.

**2.** Rule 1.3 Diligence: A lawyer shall act with reasonable diligence and promptness in representing a client. 5 O.S.2001, Ch, 1 App. 3–A Rule 1.3.

**3.** Rule 1.5 Fees. (*In relevant part*) (a)A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee

include the following: (3) the fee customarily charged in the locality for similar legal services. 5 O.S.2001, Ch, 1 App. 3–A Rule 1.5.

**4.** Rule 1.8 Conflict of Interest; Prohibited Transactions (*In relevant part*) (a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless: (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client; (2) the client is given a reasonable

of Professional Conduct. The parties submitted Stipulations of Fact and Conclusions of Law with Agreed Recommendations for Discipline. The Professional Responsibility Tribunal (PRT) adopted the stipulations of fact and conclusions of law as part of its findings. A review of the record reveals the stipulated facts and conclusions of law to be accurate. The stipulations reflect that Franklin has been a member of the Oklahoma Bar Association since 1978, and has never before been disciplined. Franklin is suspended from the practice of law for a period of two years and one day. Costs of $709.71 are also imposed.[7]

## FACTS

¶ 2 On or about January 10, 1997 Lois Ethel established the Lois Ethel Living Trust. The Trust specified in part that upon Ethel's death, Lugene Ethel Jones was to receive one-forth (1/4) of the accumulated net income and principal when she reached forty-five (45) years of age. At Ethel's request, Franklin drafted the Trust wherein he was named as successor trustee and his wife was named as an alternate trustee. On or about November 5, 1997, Ethel died and subsequent to her death, Franklin served as Trustee of the Trust. On November 5, 1997, Franklin filed an Oklahoma estate tax return asserting that the Trust consisted of assets having a gross value of $251, 515.46 and a net value of $163,436.46. Consequently, on October 23, 1998, the Oklahoma Tax Commission issued an Order exempting Non–Taxable Estate.

¶ 3 Franklin, as trustee, failed to keep any written contemporaneous time records to reflect time expended for which he charged the Trust. While acting as trustee over a three-year period, Franklin paid himself approximately $59,070.00 in fees for his services. Franklin would later testify that amount was actually less than $150.00 an hour had he billed for every hour he expended. Franklin testified his relationship with the Ethel family dated back to 1970 when they became neighbors in Hydro, Oklahoma. Franklin testified that he maintained a close, personal friendship and working relationship with Lonnie and Lois Ethel and they encouraged him in his law studies and career. Franklin testified that, throughout the years, he performed numerous legal services for the Ethels and their children without charge because of an understanding that he had made with Lois Ethel prior to her husband's death.

¶ 4 Franklin further stated that Lois Ethel, on numerous occasions, advised him that he would be compensated for all the services he had performed after she and her husband passed away and that he could, and should, charge fees in the probate of their estates for all the years of service he had provided to their family. This agreement was not in writing. Franklin testified that his customary hourly fee is $150.00 and due to the verbal understanding he had with Lois Ethel, he did not believe it was necessary to investigate

opportunity to seek the advice of independent counsel in the transaction; and (3) the client consents in writing thereto. 5 O.S.2001, Ch, 1 App. 3–A Rule 1.8.

5. Rule 1.15 Safekeeping Property. (*In relevant part*) (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safe-guarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after the termination of the representation. (b) upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property. 5 O.S.2001, Ch, 1 App. 3–A Rule 1.15.

6. Rule 8.4 Misconduct (*In relevant part*) It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation. 5 O.S.2001, Ch. 1 App. 3–A Rule 8.4.

7. Rules Governing Disciplinary Proceedings, Rule 6.16, 5 O.S.1991, Ch. 1, App. 1–A.

the prevailing rates for performing trust services.

¶ 5 Franklin further testified that he did not keep contemporaneous records of the series he performed for the Trust because of the agreement with Lois Ethel and the fact that he knew how much time he was spending working on the Trust and paid himself as money was owed him. Franklin also testified that Ethel knew of his hourly rates that he charged other clients for services rendered and that he had never kept contemporaneous records for any of the services he had performed for Ethel during her lifetime. Franklin stated that his previous work understanding and history with Ethel was one of the reasons he performed his duties as Trustee without keeping contemporaneous records.

¶ 6 While acting as Trustee, Franklin lent himself $8,000.00 from the Trust funds without documentation and did not repay the Trust. Additionally, while acting as Trustee, Franklin lent $1,400.00 to a former client named Keith Finley, and $4,250.00 to another former client named Aaron Vogt. These loans were made from trust funds. All three of these loans were made without collateral and without any written loan agreement. The loans were never repaid. Franklin did not institute any collection efforts against Finley or Vogt to recover trust monies. Franklin also testified that to his knowledge, the trustee who succeeded him has not instituted any collection efforts to do so either. He further stated that, prior to her death, Ethel knew of both Finley and Vogt, and encouraged Respondent to do what he could to help them.

¶ 7 Franklin also sold the Ethel Insurance Agency, a going business owned by the Trust, which Franklin valued at $30,000.00. He based the value of the insurance agency on its book of business and what he thought a buyer would be willing to pay. Franklin transferred an assignment of the agency to the buyers of the agency wherein the buyers were to pay it off based on the commissions of the clients retained for eighteen months and fifty percent of renewal commissions. Franklin testified that although he did not receive any funds or commissions from the buyers pursuant to the terms of the agreement, he did not make inquiry of the buyer about the payments because he assumed the buyer was paying Jones.

¶ 8 Franklin failed to establish a separate bank account for the Trust and instead, deposited Trust funds into his attorney client trust account. As a result, the Trust funds did not accrue any interest and were commingled with other funds. On July 7, 1999, Jones, on behalf of herself and the other Ethel heirs, demanded an accounting of the Trust. By January 10, 2000, Franklin had not provided the heirs with an accounting, which led to the filing of a lawsuit against Franklin, alleging several complaints, requesting an accounting and seeking damages. After the trial court ordered Franklin to respond to discovery requests for an accounting, he provided the accounting of the Trust on June 15, 2000, which reflected $155,809.18 in receipts and $120,713.01 in disbursements.

¶ 9 On October 19, 2000, Franklin and the Ethel heirs entered into a Mediation Agreement which settled the issues between the parties. Under this agreement, Franklin agreed to dismiss two lawsuits he had pending against the plaintiffs and agreed to pay them $50,000.00 on or before February 15, 2001, and to pay interest at the rate of 9.5 per cent from the date of the agreement until the principal was paid. The plaintiffs were also to dismiss the lawsuit against Franklin. On January 22, 2001, Franklin dismissed the two lawsuits against the plaintiffs with prejudice.

¶ 10 On January 7, 2001, Franklin reported the allegations of the heirs of Lois Ethel to the General Counsel of the Oklahoma Bar Association. At that time, Franklin furnished the General Counsel with a copy of the plaintiff's Petition, statement to the Mediator, and a copy of the Mediation Agreement. Franklin was also given an additional two weeks, until March 2, 2001, by the plaintiffs to comply with the Mediation Agreement terms. Franklin did not pay the amount of the settlement. He testified that as a result of the Jones' refusal to dismiss the lawsuit against him, it would make it difficult for him to obtain a loan for the settlement. Franklin then refused to pay the settlement. He did testify that they

were entitled to the full amount and that he had made two payments of $500.00.

¶ 11 On March 5, 2001, Franklin filed a Chapter 7 Bankruptcy Petition in the United States Bankruptcy Court, Western District of Oklahoma, seeking to discharge the debt he owed to the Jones. After a hearing, T.M. Weaver, United States Bankruptcy Judge for the Western District of Oklahoma, found that Franklin had breached his fiduciary duties as Trustee and found that the debt was non-dischargeable.

¶ 12 Judgment was eventually entered against Franklin by Tom Lucas, District Court Judge for Cleveland County, Oklahoma, on May 23, 2005. The court found that the plaintiffs were entitled to judgment against Franklin in the principal amount of $50,000.00 and prejudgment interest in the amount of $21,706.21, for a total judgment in the amount of $71,706.21. Post-judgment interest was also determined at 9.5 percent to be compounded annually.

¶ 13 Respondent was admitted to the practice of law on April 28, 1978. The Oklahoma Bar Association has not previously received a single complaint concerning Respondent. Respondent self-reported this matter to the General Counsel on January 7, 2001, and provided a copy of the civil petition filed against him, his statement to the mediator, and the mediation agreement.

## RECOMMENDATIONS AND FINDINGS OF THE PROFESSIONAL RESPONSIBILITY TRIBUNAL

¶ 14 After hearing the foregoing at the tribunal hearing, the three members of the Professional Responsibility Tribunal concluded that the respondent's conduct violated Rules 1.1, 1.3, 1.5, 1.8, 1.15, and Rule 8.4 of the Rules of Professional Conduct, 5 O.S. Ch. 1, App. 3–1 (Supp.1995), and Respondent could be disciplined as provided in the Rules Governing Disciplinary Proceedings, 5 O.S. Ch. 1, App. 1–A (1995). The parties requested a sixty (60) day suspension, and the tribunal disagreed with this recommendation and suggested that Franklin be suspended from the practice of law for a period of two (2) years.

## STANDARD OF REVIEW

¶ 15 In *State ex rel. Oklahoma Bar Association v. Todd*, 1992 OK 81, 833 P.2d 260, 262, we set out the standard of review in attorney disciplinary proceedings. This Court held:

> In attorney disciplinary proceedings this Court's determinations are made de novo. The ultimate responsibility for deciding whether misconduct has occurred and what discipline is warranted if misconduct is found rests with us in the exercise of our exclusive original jurisdiction in bar disciplinary matters. Accordingly, neither the findings of fact of a Professional Responsibility Tribunal (PRT) nor its view of the evidence or credibility of witnesses are binding on us and recommendations of a PRT are merely advisory. (citations omitted)

¶ 16 In addition, to warrant a finding against a lawyer in a contested case, the charges of misconduct must be established by clear and convincing evidence. Rule 6.12(c) of the RGDP; *State ex rel. Oklahoma Bar Association v. Thomas*, 1995 OK 145, 911 P.2d 907, 909. With these standards in mind we turn to a discussion of the misconduct charged.

## VIOLATION OF RULES OF PROFESSIONAL CONDUCT AND RULES GOVERNING DISCIPLINARY PROCEEDINGS

¶ 17 Rule 1.1 of the Rules of Professional conduct states: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Respondent did not investigate the customary rates for performing trust services, and he made loans to himself and former clients out of trust funds without collateral and without any written loan agreements. Respondent also failed to timely provide an accounting when one was requested. This was the first and only trust Franklin ever served as trustee. From the record, it is apparent that Franklin did not give competent representation to his client.

¶ 18 Rule 1.3 of the Rules of Professional Conduct states: "A lawyer shall act with

reasonable diligence and promptness in representing a client." Respondent did not act with reasonable diligence in representation of his client. Respondent did not keep contemporaneous records for any work he performed or services he rendered the Trust. Respondent also failed to institute any collection efforts on the loans he made to former clients out of Trust monies. Respondent also failed to collect funds and commissions from the sale of the Trust-owned insurance company. Respondent also failed to establish a separate bank account for the Trust where it could earn interest. Therefore, there was a clear violation of Rule 1.3 of the Rules of Professional Conduct.

¶ 19 Rule 1.5 of the Rules of Professional Conduct provides in pertinent part that: "A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee shall include the following: (3) the fee customarily charged in the locality for similar legal services." Respondent did not investigate the customary rates for performing trust services. He paid himself approximately $59,070.00 in fees for his services over a three-year period. He also lent himself $8,000.00 from Trust funds without documentation and did not repay the Trust. Franklin testified that he billed the trust $150.00 per hour for his work regarding the trust, but he did not keep any contemporaneous records for the services he performed. Respondent therefore violated Rule 1.5 of the Rules of Professional conduct.

¶ 20 Rule 1.8 in pertinent part, states:
A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless: (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client; (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and (3) the client consents in writing thereto.
5 O.S.2001, Ch. 1 App. 3–A Rule 1.8.

¶ 21 In the present matter, Respondent lent himself $8,000.00 from Trust funds without documentation or disclosure, and did not repay the Trust, in clear violation of Rule 1.8. and in clear violation of his fiduciary duties as trustee.

¶ 22 Rule 1.15 of the Rules of Professional Conduct deals with safekeeping property and mandates that a lawyer is to keep client's property separate from his or her own property as well as keeping a full accounting of said property. In the present matter, the Respondent took the Trust funds and deposited them in his trust account, commingling the Trust fund with other funds. Franklin treated the funds as his own, making loans to former clients and himself, all without any written documentation which, at least, is simple conversion and, at worst, misappropriation. See *State ex rel. Oklahoma Bar Association v. Johnston,* 1993 OK 91, ¶ 21, 863 P.2d 1136. Respondent also failed to make an accounting of the Trust funds when it was requested and did not make a full accounting of the Trust monies until ordered to do so by the District Court. Franklin is in violation of Rule 1.15.

¶ 23 Rule 8.4 pertains to conduct involving dishonesty, fraud, deceit or misrepresentation. After a review of the record, Respondent's loans to himself and former clients, without documentation and without any repayment were dishonest and deceitful. Failure to disclose these loans to his clients, as well as to obtain consent, amounts to misrepresentation. Respondent also attempted to discharge the debt owed plaintiff in Bankruptcy. However the Bankruptcy Judge found that he had violated his fiduciary duties and declared the debt non-dischargeable.

¶ 24 This Court has imposed varying degrees of discipline upon lawyers for violating some or all of the rules we have found Respondent violated. In *State ex rel. Oklahoma Bar Association v. Wallace,* 1998 OK 65, ¶ 23, 961 P.2d 818, this Court found that a two-year suspension was warranted for an attorney who, while acting as a trustee to an irrevocable trust, made loans from the trust to a friend, obtaining no security or personal guarantees. This Court found, in that matter, the attorney was not acting within the prescribed standards of conduct mandated

for a trustee, much as in the matter at bar. This Court also suspended an attorney for a period of 18 months for borrowing money from a client without filing documents to secure the client's interest and without advising the client to seek independent counsel. *State ex rel. Oklahoma Bar Association v. Cross,* 1996 OK 131, ¶ 13, 14, 932 P.2d 1107. See also, *State ex rel. Oklahoma Bar Association v. Gray,* 1997 OK 140, ¶ 27, 948 P.2d 1221(disbarment); *State ex rel. Oklahoma Bar Association v. Raskin,* 1982 OK 39, 642 P.2d 262 (disbarment).

### FINDINGS OF THIS COURT AND DISCIPLINE

¶ 25 Given Respondent's behavior, we cannot agree with him that a sixty (60) day suspension is sufficient to satisfy the goals of discipline, regardless of his self-reporting, cooperation with the General Counsel and previous unblemished record. We agree with the PRT regarding Count I and find the Respondent violated Rules 1.1, 1.3, 1.5, 1.8, 1.15, and Rule 8.4 of the Rules of Professional Conduct by clear and convincing evidence. Based on the facts before this Court, we find a suspension of two years and one day to be the appropriate discipline in light of the egregious nature of his misconduct in the violation of his fiduciary duties. Accordingly, Respondent is suspended from the practice of law for a period of two years and one day to begin on the day this opinion becomes final. The costs of the proceedings in this disciplinary action in the amount of $709.71 are to be paid by the Respondent within ninety days from the day this opinion becomes final.

**RESPONDENT SUSPENDED FROM THE PRACTICE OF LAW FOR TWO YEARS AND ONE DAY; RESPONDENT ORDERED TO PAY COSTS.**

¶ 26 CONCUR: WINCHESTER, C.J., EDMONDSON, V.C.J., LAVENDER, HARGRAVE, WATT, TAYLOR, COLBERT, JJ.

¶ 27 NOT PARTICIPATING: OPALA, KAUGER, JJ.