2007 OK 92

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

**v.**

**Nathan H. YOUNG III, Respondent.**

**SCBD No. 5293.**

Supreme Court of Oklahoma.

Nov. 20, 2007.

Dan Murdock, General Counsel, Mike Speegle, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

Nathan H. Young III, Tahlequah, OK, Pro Se.

TAYLOR, J.

¶ 1 The Oklahoma Bar Association (OBA), filed a complaint against attorney Nathan H. Young III (Young). The OBA alleges in two counts that Young violated the Oklahoma Rules of Professional Conduct, 5 O.S.2001, ch. 1, app. 3–A (ORPC), and the Oklahoma Rules Governing Disciplinary Proceedings, 5 O.S.2001, ch. 1, app. 1–A (RGDP). In his answer, Young admitted to the allegations in Count I of the complaint and to some of the allegations in Count II. He also admitted that he violated the ORPC and the RGDP and that he should be disciplined. Young was licensed to practice law in Oklahoma in 1975 and was so licensed at all times relevant to this proceeding.

¶ 2 On May 30, 2007, the Professional Responsibility Tribunal (PRT), conducted a hearing. The PRT found that Young had violated the ORPC and the RGDP and recommended that Young be disbarred, ordered to pay restitution, and directed to pay the costs of the proceedings.

¶ 3 In bar disciplinary proceedings, this Court exercises its constitutional, nondelegable power to regulate the practice of law and legal practitioners. *State ex rel. Oklahoma Bar Ass'n v. Bolton,* 1994 OK 53, ¶ 15, 880 P.2d 339, 344. This Court decides whether misconduct has occurred and, if so, the appropriate discipline to be imposed. *State ex rel. Oklahoma Bar Ass'n v. Todd,* 1992 OK 81, ¶ 2, 833 P.2d 260, 261. The violations of a lawyer's ethical rules must be established by clear and convincing evidence. *State ex rel. Oklahoma Bar Ass'n v. Rogers,* 2006 OK 54, ¶ 9, 142 P.3d 428, 432. In our *de novo* review, this Court is not bound by the PRT's findings of fact, its view of the evidence, its view of the credibility of witnesses, or its recommendations of discipline. *Todd,* 1992 OK 81 at ¶ 2, 833 P.2d at 261.

## I. COUNT I

### A. Background and Facts

¶ 4 Young represented a client in a personal injury case. The client had been treated for the injuries at Eastern Oklahoma Orthopedic Center (Orthopedic Center). Orthopedic Center perfected a lien for $3,803.00, the amount of its medical services. On or about March 31, 2006, the personal injury claim was settled.

¶ 5 Young requested permission from Orthopedic Center that he be allowed to endorse the settlement check on its behalf. In exchange for his promise to pay Orthopedic Center as soon as the funds cleared the bank, it allowed Young to endorse the settlement check on its behalf. On April 1, 2006, Young deposited the settlement check of $142,000.00 into his trust account at Banc First. After failing to receive payment, Orthopedic Center made several attempts to contact Young. He did not return the calls. Young wrote Orthopedic Center a check for $3,823.00 on his trust account at Banc First dated May 30, 2006. The check was returned for insufficient funds.

¶ 6 On June 5, 2006, Orthopedic Center filed a grievance against Young with the OBA. On June 8, 2006, Young sent Orthope-

dic Center a cashier's check drawn from funds in the Tulsa Teacher's Credit Union. On June 12, 2006, Orthopedic Center released the lien.

¶ 7 On June 21, 2006, the OBA sent Young a letter asking him to respond to the grievance. Young responded by a letter dated July 13, 2006, with a copy of the cashier's check attached. When the OBA learned about the check drawn on his trust account being returned for insufficient funds, it wrote Young a second letter, dated July 27, 2006, directing him to address the issue of the insufficient funds in his trust account. On August 22, 2006, the OBA received Young's response in a letter dated May 16, 2006. Young's letter was nonresponsive and untimely.

¶ 8 Young's testimony and his trust account records show that Young used his trust account as an operating account and as a personal account. Young testified that he, his wife, and his paralegal were authorized to write checks on the trust account. The trust account's statements show that checks were written on it for home and car insurance, for cable television services, for cash, for payroll obligations, and to members of Young's family. Young's name appears as the signatory on some of these checks, and he has not alleged that he did not sign the checks on which his signature appears. Young admitted that the trust account had been used as an operating account because the Internal Revenue Service (IRS) had placed a lien on his operating account. Young admitted that he was responsible for his actions and his employees' actions. He stated that he has remedied the problems with the improper use of trust funds.

¶ 9 Young has failed to pay an additional $19,714.77 in bills from other of his client's medical providers. He had subtracted this amount from his client's settlement funds and did not disburse this amount to either the client or the providers. He stated that he intends to pay these providers, but there is no indication that any payments have been made.

¶ 10 The PRT found that, because of the outstanding claims, Young's misuse of trust funds was flagrant and unsettled. Agreeing with the OBA, the PRT found and Young admitted that his conduct violated rules 1.15,[1] 4.1,[2] and 8.4(b), (c), and (d)[3] of the ORPC. The OBA alleged and Young admitted that his conduct as to Count I also violated rules

1. Rule 1.15 of the ORPC provides:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state where the lawyer's office is situated, or elsewhere with the written consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

2. Rule 4.1 of the ORPC provides:

In the course of representing a client a lawyer shall not knowingly:

(a) make a false statement of material fact or law to a third person; or

(b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.

3. Rule 8.4(b), (c), and (d) of the ORPC provides:

It is professional misconduct for a lawyer to:

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice[.]

1.4 [4] and 5.2 [5] of the RGDP. The PRT did not make a finding and the OBA did not address in its brief the violation of Rule 5.2 of the RGDP. However, the PRT did find that Young's actions in regard to Count I were sufficient to warrant disbarment and so recommended.

## B. Analysis

¶ 11 Rule 1.15 of the ORPC requires a lawyer to maintain a separate account for funds belonging to a client or a third party, to safeguard the funds, to maintain complete records of the funds, and to promptly notify and deliver the funds to the owner when the funds are received. A violation of Rule 1.15 occurs when a lawyer misuses trust funds. A subsequent replenishing of the funds or an intent just to "borrow" the funds does not negate the violation. Similarly, Rule 1.4 of the RGDP requires that a lawyer entrusted with money or other property for a specific purpose to apply it to that purpose. A lawyer's mishandling of third-party funds is treated with the same disfavor as the mishandling of client funds. *State ex rel. Oklahoma Bar Ass'n v. Taylor,* 2000 OK 35, ¶ 17, 4 P.3d 1242, 1250.

¶ 12 In determining culpability for mishandling client or third-party funds, this Court utilizes three standards: (1) commingling, mixing trust funds with that of the lawyer's, (2) simple conversion, applying trust funds to a purpose other than that for which they were entrusted to the lawyer, and (3) misappropriation, purposefully depriving the person for which the trust funds are held of the funds through deceit and fraud. *Id.* The

culpability descends from misappropriation to commingling. *Id.*

¶ 13 Young's conduct rises to the level of misappropriation, the most serious form of violation under Rule 1.15 of the ORPC. Young deposited his client's settlement check into his trust account. Because the IRS had a lien on his operating account, Young used the trust funds to pay his personal and office expenses instead of paying his client's medical bills. While his wife and paralegal signed some of these trust account checks, Young's signature appears on checks written to his wife, to his mother, and to his sister and on checks written for making payroll obligations, for cash, and for cable and internet service. Not only did Young directly violate Rule 1.15 of the ORPC, he was duty-bound to supervise the work of his employees and stands ultimately responsible for their actions as well. *Taylor,* 2000 OK 35 at ¶ 19, 4 P.3d at 1251.

¶ 14 In the process of misappropriating the trust funds, Young promised to pay Orthopedic Center as soon as the settlement check cleared. He did not make any payment for several weeks and then sent a worthless check drawn on his dissipated trust account. Young has yet to pay $19,714.77 of his client's medical bills for which he withheld funds from the settlement amount and for which Young should be holding the funds in his trust account. Young spent these trust funds for his and his family's benefit, funds to which he had no entitlement. It was deceitful, misleading, and fraudulent for Young to expend the medical providers' funds for his and his family's benefit without the client's and the providers' knowledge.

---

4. Subsections a, b, and c of Rule 1.4 of the RGDP provides in part:

(a) All members of the Bar who are required under the Oklahoma Rules of Professional Conduct, Rule 1.15, to maintain a trust account for the deposit of clients' funds entrusted to said attorney, shall do so and furnish evidence thereof as hereinafter provided....

(b) Where money or other property has been entrusted to any attorney for a specific purpose, he must apply it to that purpose. He may not avail himself of a counterclaim or setoff for fees against any money or other property of his client coming into his hands for such specific purpose, and a refusal to account for

and deliver over such money or property upon demand shall be deemed a conversion. This does not apply to the retention of money or other property otherwise coming into the hands of a lawyer and upon which the lawyer has a valid lien for his services.

(c) Theft by conversion or otherwise of the funds of a client shall, if proved, result in disbarment.

5. Rule 5.2 of the RGDP requires a lawyer to respond with twenty days after the General Counsel of the OBA serves the lawyer with a copy of a grievance or with a recital of relevant facts or allegations and a lawyer's failure to do so is grounds for discipline.

Further, by drawing a check on his trust account which had insufficient funds and sending it to Orthopedic Center, Young violated Rule 4.1 of the ORPC which requires truthfulness in statements to others. Similarly, Young, as he stipulated, violated Rule 8.4 of the ORPC which prohibits dishonest, fraudulent, and deceitful conduct and conduct which is prejudicial to the administration of justice.

¶ 15 When the OBA directed Young to respond to Orthopedic Center's grievance, he attached a copy of the cashier's check drawn from a personal account to his untimely response. He did not disclose that the account was not a trust account. He did not disclose that he had previously sent a check to Orthopedic Center which was drawn on his trust account and returned for insufficient funds. When directed to address the check which had been returned, Young sent a copy of the settlement check, a copy of the deposit slip, and a letter stating the cashier's check "was purchased at Tulsa Teacher's Credit Union where [his] family has an account." This reply was not responsive to the OBA's request for information. Young's conduct in responding to the OBA violated Rule 5.2 of the RGDP.

## II.   COUNT II

### A.   Background and Facts

■ ¶ 16 Mr. Virgle Wilhelm hired Young on a contingency fee arrangement to represent him when, on October 20, 1999, the City of Tahlequah (Tahlequah) City Council terminated two contracts it had with Mr Wilhelm. On December 23, 1999, Young filed a lawsuit on behalf of Mr. Wilhelm against Tahlequah in Cherokee County District Court. Mr. Wilhelm testified that, after "nothing had happened for 1½ years," he became frustrated and tried to hire another lawyer but was refused because of his being represented by Young. On April 6, 2001, Young dismissed the Cherokee County action.

¶ 17 On April 16, 2001, Young filed a complaint in the federal district court of the Eastern District of Oklahoma. On October 12, 2001, the defendants filed a motion for summary judgment and a brief in support.

Young was given an extension of time until November 1, 2001, within which to reply. Young did not file a reply but, on November 2, 2001, filed a motion to dismiss this federal action, and the court granted the motion.

¶ 18 On November 30, 2001, Young again filed a petition in Cherokee County District Court. On Tahlequah's motion, the case was removed to the federal district court. On November 24, 2002, Young filed a motion to dismiss without prejudice. On November 26, 2002, the federal court granted Tahlequah's motion for summary judgment on the federal claims. The court also dismissed the state claims without prejudice.

¶ 19 During the course of this federal litigation, Tahlequah filed a motion to assess costs. After Young failed to respond to the motion, the court entered an order taxing costs against Mr. Wilhelm in the amount of $859.83. Young did not inform Mr. Wilhelm about the judgment, and Mr. Wilhelm did not learn about it until he was refinancing his house.

¶ 20 On April 10, 2003, Young filed yet another petition in Cherokee County District Court. On July 28, 2003, Tahlequah filed a motion to dismiss asserting that the claims were time-barred. Young failed to respond to Tahlequah's motion to dismiss. On November 24, 2003, Young filed a motion to dismiss without prejudice, which the court granted. During the pendency of this case, Tahlequah made an offer to confess judgment in the amount of $5,079.35. Young did not inform Mr. Wilhelm of the offer at the time it was made, and Mr. Wilhelm did not learn about it until after Young dismissed the case.

¶ 21 On July 23, 2004, Young again filed a petition in Cherokee County District Court. Tahlequah filed its answer on August 3, 2005, and a motion for summary judgment on December 1, 2005. Young was given until February 6, 2006, to respond. Rather than responding, Young filed a motion to dismiss the case without prejudice which the court granted. After this last dismissal, Mr. Wilhelm tried to contact Young several times. Young did not return Mr. Wilhelm's calls. Young did not advise Mr. Wilhelm that he had filed

and been granted dismissals in at least some of the actions.

¶ 22 During Young's representation of Mr. Wilhelm, Mr. Wilhelm learned that Young had filed bankruptcy. Mr. Wilhelm agreed to advance Young $10,000.00 for expenses related to his lawsuit in exchange for Young lowering his contingency fee. Mr. Wilhelm never received an accounting for the $10,000.00. In the proceedings before the PRT, Young accounted for $2,488.76 of the $10,000.00, leaving a balance of $7,511.24. Young has not accounted for the $7,511.24, and it was not in his trust account in May of 2006 since the account was overdrawn.

¶ 23 In addition to the $10,000.00 advance, Mr. Wilhelm loaned Young $10,000.00. The note states that Young was to pay the sum of $10,600.00 within sixty days, which amount included interest at six percent. In case of default, the interest was to accrue at six percent per annum or the maximum legal interest rate, whichever was greater. Interest on $10,000.00 at six percent per annum for sixty days is approximately $100.00. Young timely paid Mr. Wilhelm $10,100.00 on the note. Mr. Wilhelm testified: "Well, right off the top of my head, that [$600.00 in interest] is significantly better than nine percent in my favor." When Young paid Mr. Wilhelm $10,100.00 on the note, Mr. Wilhelm asked Young about the other $500.00. Young replied that the $100.00 was interest

at six percent per annum. Mr. Wilhelm did not press the issue because Young was his lawyer. The record does not show whether Young advised Mr. Wilhelm to retain separate counsel in regard to this loan.

### B. Analysis

¶ 24 There is disagreement between the OBA and Young as to whether the statutes of limitations have run on Mr. Wilhelm's claims. We, like the PRT, do not find that it is necessary to make this legal determination since filing five cases in approximately six years and dismissing them when a substantive response became due, in itself, is offensive to the rules of professional conduct. Whether or not Mr. Wilhelm has viable claims would not change the result we reach here.

¶ 25 The OBA alleged that Young had violated rules 1.1,[6] 1.2,[7] 1.3,[8] 1.4,[9] 1.8(a),[10] and 8.4(c) [11] of the ORPC. The PRT found that Young had violated rules 1.1, 1.2, 1.3, 1.4, and 1.5(b) of the ORPC. The PRT found that the evidence was insufficient to support a finding that Young had violated rules 1.8(a) and 8.4(c) of the ORPC.

¶ 26 We agree that as to Count II, Young violated Rule 1.1 of the ORPC by failing to adequately represent Mr. Wilhelm. Adequate representation under Rule 1.1 requires thoroughness and preparation reasonably

6. Rule 1.1 of the ORPC provides:

    A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

7. Rule 1.2 of the ORPC provides in part:

    (a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (b), (c), and (d) and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. . . .

8. Rule 1.3 of the ORPC provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

9. Rule 1.4 of the ORPC provides:

    (a) A lawyer shall keep a client reasonably informed about the status of a matter and

promptly comply with reasonable requests for information.

    (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

10. Rule 1.8(a) of the ORPC provides:

    (a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless:

    (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

    (2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

    (3) the client consents in writing thereto.

11. For the text of Rule 8.4(c), *see supra* note 4.

necessary for the representation. This provision is akin to Rule 1.3 which requires "reasonable diligence and promptness in representing a client." By repeatedly filing and then dismissing the cases when substantive responses were due, Young violated rules 1.1 and 1.3 of the ORPC.

¶ 27 Young violated Rule 1.2(a) of the ORPC by failing to consult with Mr. Wilhelm before dismissing his cases and by failing to advise him of the offer to confess judgment. These actions along with failing to advise Mr. Wilhelm of pending motions, failing to advise Mr. Wilhelm of the status of his cases, failing to advise Mr. Wilhelm that a judgment was entered against him for costs, and failing to return Mr. Wilhelm's calls after dismissing his case violate Rule 1.4 of the ORPC. Clearly, Young did not keep Mr. Wilhelm reasonably informed as required by these rules.

¶ 28 The PRT found that the OBA had not proven Young violated Rule 1.8(a) by clear and convincing evidence. The OBA argues that Young's paying Mr. Wilhelm only $100.00 in interest violates Rule 1.8(a) because it is neither fair nor reasonable. Rule 1.8(a) prohibits a lawyer from knowingly acquiring a business interest adverse to a client unless the transaction is fair and reasonable, there is full disclosure, the client has been given the opportunity to seek independent legal advice, and the client agrees in writing. In the record before us, the OBA failed to prove a violation of Rule 1.8(a) by clear and convincing evidence. Without construing the contract but considering Mr. Wilhelm's testimony regarding the amount of interest being more than nine percent in his favor and the fact that $600.00 interest for sixty days would be more than thirty-six percent interest per annum, we cannot agree that the payment of $100.00 was unreasonable on its face. The OBA did not put forth evidence that there was not full disclosure or that Mr. Wilhelm was not given the opportunity to seek independent legal advice.

¶ 29 The PRT also found Young did not violate Rule 8.4(c) of the ORPC as to Count II because he did not have an evil motive. The OBA urges this Court to find an evil motive by inference from the facts. Rule 8.4(c) of the ORPC provides: "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Young deceived Mr. Wilhelm by taking the retainer, failing to account for the funds, and failing to keep safe the unaccounted for funds, failing to inform Mr. Wilhelm of the assessment of costs in the federal case, among other things. Young's deceit violated Rule 8.4 of the ORPC.

¶ 30 Without discussion or analysis, the PRT found that Young had violated Rule 1.5(b) of the ORPC by failing to communicate the basis for a fee other than the contingency fee. The OBA did not allege a violation of Rule 1.5(b) or urge one in its brief. We disagree with the PRT. The OBA did not pursue a violation of Rule 1.5(b) and, thus, did not present clear and convincing evidence of a violation of this rule.

### III. DISCIPLINE

■ ¶ 31 As to both counts, we find that Young has violated rules 1.1, 1.2, 1.3, 1.4, 4.1, 1.8(a) and 8.4(b), (c), and (d) of the ORPC and rules 1.4 and 5.2 of the RGDP. We recognize that Young accepts responsibility for at least some of his misconduct and has stated that he has established procedures to maintain the integrity of his trust account. However, we question whether the procedures are sufficient to adequately protect his clients' funds.

■ ¶ 32 Our goal in determining the appropriate discipline is not to punish the offending lawyer. *State ex rel. Oklahoma Bar Ass'n v. Beasley*, 2006 OK 49, ¶ 31, 142 P.3d 410, 417. The purposes of discipline are to protect the public, to preserve the integrity of the bar, and to deter similar conduct. *Id.* Our determination of the appropriate discipline is based on the particular facts surrounding the misconduct, but we consider the discipline imposed for similar misconduct. *Id.*

¶ 33 In *State ex rel. Oklahoma Bar Ass'n v. Perkins*, 1988 OK 65, 757 P.2d 825, this Court disbarred a lawyer for failing to maintain a trust account, commingling clients' funds, converting his client's funds to his personal use, and failing to use the funds for their intended purpose. Perkins contended

that the funds had not been converted because he did not intend to inflict injury on his clients and funds were always available for return to the clients. *Id.* at ¶ 32, 757 P.2d at 832. This Court stated:

> "Lawyers who 'borrow' may, it is true, be less culpable than those who had no intent to repay, but the difference is negligible in this connection. Banks do not rehire tellers who 'borrow' depositors' funds. Our professional standard, if anything, should be higher. Lawyers are more than fiduciaries: they are representatives of a profession and officers of this Court."

*Id.* (quoting *In re Wilson*, 81 N.J. 451, 409 A.2d 1153 (1979)).

¶ 34 In *State ex rel. Oklahoma Bar Ass'n v. Mayes*, 2003 OK 23, 66 P.3d 398, Mayes settled a claim for almost $30,000.00 on behalf of two minor children after their mother was killed in a car accident. The court approved the settlement and approved an attorney fee of approximately $10,000.00. Mayes deposited the settlement checks into his trust account. No checks were drawn on the trust account for the attorney fees and no payments were made to the minor children. Over the next few months, the trust account was overdrawn so that there were insufficient funds to pay the minors. Mayes filed an accounting with the court misrepresenting the status of the funds. Mayes testified that he used the funds for living expenses and to pay his secretary.

¶ 35 Mayes had previously been disciplined by this Court for similar behavior by his office manager. This Court discussed the difficulty in discerning between the levels of misconduct for mishandling a client's funds and found that Mayes had misappropriated the settlement funds. *Id.* at ¶ 1, 66 P.3d at 400. Mayes ·was disbarred for the misconduct.

¶ 36 In *State ex rel. Oklahoma Bar Ass'n v. Gray*, 1997 OK 140, 948 P.2d 1221, Gray was disbarred for converting his firm's and his clients' funds for personal use and for obtaining a loan from a client without advising the client to get independent legal counsel. In *State ex rel. Oklahoma Bar Ass'n v. Arnold*, 2003 OK 31, 72 P.3d 10, a lawyer was disbarred for converting money entrusted to him to set up a trust account and deliberately deceiving his clients about their trust accounts.

¶ 37 These cases show how seriously this Court treats a lawyer's misappropriation of trust funds. As in these cases, Young's misconduct warrants disbarment. Young admittedly used his trust account for operating and personal expenses. It matters not that Young may not have had an evil motive for so doing or that he intended to repay the money. *Gray*, 1997 OK 140 at ¶ 27, 948 P.2d at 1225. The fact is that many of his client's medical creditors have not been paid. Young has also failed to account for $7,511.24 in funds paid by Mr. Wilhelm as an advance on his expenses and which were not retained in his trust account. In order to maintain the integrity of the bar, it is important that Young make restitution to his client's medical providers and to Mr. Wilhelm. Young's misconduct in misappropriating, mishandling, and failing to account for his clients' and third-party funds warrants disbarment.

## IV. COSTS

¶ 38 The OBA has filed an application to assess the costs of these proceedings in the amount of $1,065.54 against Young and has included documentation with the application. Young has not contested the motion. Under Rule 6.16 of the RGDP, the costs of the investigation, the record, and disciplinary proceedings shall be surcharged against a lawyer unless otherwise ordered by this Court for good cause shown when discipline is imposed. Young has not presented any reason why this Court should reduce the amount of the costs. Thus, Young is ordered to pay the costs in the amount of $1,065.54 within ninety days after this opinion becomes effective.

## V. CONCLUSION

¶ 39 Young attributed part of the problem to stresses in his life and to his bouts with depression, but he does not consider these factors a defense. This Court is aware that Young has suffered many family problems during the time of the occurrences underlying this discipline. He also has suffered

from depression. Because Young did not interpose a Rule 10 defense,[12] we do not consider the factors involved in a Rule 10 proceeding.

¶ 40 Upon *de novo* review, we conclude that there is clear and convincing evidence that Young violated the ORPC and the RGDP. We further conclude that the proper discipline is disbarment. Nathan H. Young III is hereby disbarred and his name stricken from the roll of attorneys. As a condition of reinstatement under Rule 11.1 of the RGDP, Young must make restitution to his client's medical providers as discussed in Count I and must make restitution to Mr. Wilhelm for the unaccounted for funds which were advanced for litigation expenses as discussed in Count II. Young is ordered to pay the costs of these proceedings in the amount of $1,065.54 within ninety days after this opinion becomes effective.

RESPONDENT DISBARRED; ORDERED TO PAY COSTS.

WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, OPALA (joins KAUGER, J.), KAUGER (by separate writing), WATT and TAYLOR, JJ., concur.

COLBERT, J. (joins KAUGER, J.), concurs in result.

REIF, J., not participating.

KAUGER, J., concurring, with whom OPALA and COLBERT, JJ., join:

¶ 1 Within the last seven months we have considered two other bar matters which have involved the withdrawal of funds from trust accounts. In April of this year, in *State ex rel. Oklahoma Bar Association v. Franklin,* 2007 OK 18, ¶ 25, 163 P.3d 507, we suspended a lawyer for two years and one day for conduct constituting a breach of fiduciary duty as trustee which included lending money to himself and his friends. More recently, in September, in *State ex rel. Oklahoma Bar Association v. Combs,* 2007 OK 65, ¶ 39, 175 P.3d 340, we suspended a lawyer for ninety days for conduct involving mishandling and commingling client funds. Because today's

cause involves additional counts of inadequate representation, I agree that more severe discipline is warranted than that which was imposed in either *Franklin,* supra or *Combs,* supra.

---

12. Rule 10 of the RGDP provides for a lawyer's indefinite suspension from the practice of law when the lawyer becomes "personally incapable of practicing law."