1999 OK 97

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Robert H. ARTHUR, Respondent.**

**No. SCBD–4440.**

Supreme Court of Oklahoma.

Dec. 7, 1999.

---

Janis Hubbard, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Robert H. Arthur, pro se, Duncan, Oklahoma, for Respondent.

OPALA, J.

¶ 1 In this disciplinary proceeding against a lawyer, the issues to be decided are: (1) Does the record submitted for our examination provide sufficient evidence for a meaningful *de novo* consideration of the complaint's disposition?[1] (2) Is a 30–day suspension an appropriate disciplinary sanction for respondent's breach of professional ethics? We answer both questions in the affirmative.

I

## INTRODUCTION TO THE RECORD

¶ 2 The Oklahoma Bar Association [Bar] charged Robert H. Arthur [Arthur or respondent], a licensed lawyer, with one count of professional misconduct.[2] The pretrial order consists of stipulated facts, conclusions of law and agreed circumstances to be considered in mitigation of the charges together with recommendation of discipline. *Respondent admitted to having violated Rules*

*1.8(a)* [3] *and 1.8(b)* [4], *Oklahoma Rules of Professional Conduct [ORPC].*

¶ 3 Following receipt of the parties' joint brief and upon consideration of the testimony on file and stipulations, the trial panel issued a report with its findings of fact and conclusions of law together with a recommendation for discipline. In accord with the parties' stipulations, the Professional Responsibility Tribunal [PRT or trial panel] found that Arthur violated ORPC Rules 1.8(a) and 1.8(b). It recommended that Arthur be privately reprimanded and that he bear the costs of the proceedings.

II

## THE RECORD BEFORE THE COURT CONTAINS SUFFICIENT EVIDENCE FOR A MEANINGFUL *DE NOVO* CONSIDERATION OF ALL FACTS RELEVANT TO THIS PROCEEDING

¶ 4 In a bar disciplinary proceeding this court functions in an adjudicative capacity as a licensing authority vested with exclusive original jurisdiction.[5] Its cognizance

---

1. The record consists of the pretrial order (which contains stipulated facts, agreed conclusions of law, factors to be considered in mitigation of the charges and agreed recommendation of discipline), a transcript of the hearing held before the Professional Responsibility Tribunal, exhibits offered by both parties, which were admitted in evidence at that hearing, and the Report of the Professional Responsibility Tribunal.

2. This bar disciplinary proceeding was commenced on 26 March 1999 by the filing of the Bar's complaint in accordance with the provisions of Rule 6 (*Formal Proceedings Before Supreme Court and Professional Responsibility Tribunal*), Rules Governing Disciplinary Proceedings [RGDP], 5 O.S.1991, Ch. 1, App. 1–A. The pertinent terms of RGDP Rule 6.1 are:

   The proceeding shall be initiated by a formal complaint prepared by the General Counsel, approved by the Commission, signed by the chairman or vice-chairman of the Commission, and filed with the Chief Justice of the Supreme Court.

   The Bar's March 26 complaint charged respondent with violating Rules 1.8(a) and 1.8(b) of the Oklahoma Rules of Professional Conduct [ORPC], 5 O.S.1991, Ch. 1, App. 3–A.

3. The terms of Rule 1.8(a), Oklahoma Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, are:

   (a) A lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless: (1) the transaction and terms on which the lawyer acquires the interest are *fair and reasonable to the client* and are *fully disclosed and transmitted in writing* to the client in a manner which can be reasonably understood by the client; (2) the client is given a *reasonable opportunity to seek the advice of independent counsel* in the transaction; and (3) the *client consents in writing* thereto. (emphasis supplied).

4. The pertinent terms of Rule 1.8(b), Oklahoma Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, are:

   A lawyer shall not use information relating to the representation of a client to the disadvantage of the client unless the client consents after consultation, except as permitted or required by Rule 1.6 or Rule 3.3.

5. *State ex rel. Okl. Bar Ass'n v. Leigh*, 1996 OK 37, ¶ 11, 914 P.2d 661, 666; *State ex rel. Okl. Bar Ass'n v. Eakin*, 1995 OK 106, ¶ 8, 914 P.2d 644,

rests on the constitutionally invested, nondelegable power to regulate the practice of law. The court's authority includes the licensure, ethics, and discipline of legal practitioners in this state.[6] Before deciding whether discipline is warranted and what sanction, if any, is to be imposed for the misconduct alleged, this court conducts a nondeferential, full-scale, *de novo* examination of all relevant facts,[7] in the course of which the recommendations of the trial panel are *neither* binding *nor* persuasive.[8] The court is not guided by the standard-of-review criteria applicable in the context of corrective process on appeal or on certiorari. In the latter context mandated deference may require that another tribunal's findings of fact be left undisturbed.[9]

¶ 5 The court's duty can be discharged *only if* the trial panel submits a complete record of its proceedings.[10] Our initial task is to ascertain whether the record is sufficient *to permit* (a) an independent determination of the critical facts and (b) the crafting of appropriate discipline. The latter factor is to be *guided by* (1) what is consistent with the discipline imposed upon other lawyers who have committed similar acts of

professional misconduct and (2) what discipline avoids the vice of visiting disparate treatment on the respondent-lawyer.[11]

¶ 6 Arthur has admitted, and the record supports, the charge of professional misconduct. Upon consideration of the record, we conclude that its contents are adequate for this court's *de novo* consideration of respondent's professional misconduct.

## III

### THE CHARGES LODGED AGAINST THE RESPONDENT

¶ 7 The charges against Arthur rest on three loans he solicited and received from two clients. Beginning in 1994, Arthur performed estate planning among other legal services for an elderly couple, Mr. and Mrs. Detrick.[12] While providing these services, he obtained financial information about his clients and used that knowledge to approach them about lending him money. On 25 October 1995 he obtained a $6,000 loan from the Detricks and signed a promissory note. In the following year, he received from Mrs.

647; *State ex rel. Okl. Bar Ass'n v. Bolton,* 1994 OK 53, ¶ 15, 880 P.2d 339, 344; *State ex rel. Okl. Bar Ass'n v. Donnelly,* 1992 OK 164, ¶ 11, 848 P.2d 543, 545; *State ex rel. Okl. Bar Ass'n v. Raskin,* 1982 OK 39, ¶ 11, 642 P.2d 262, 265; *In re Integration of State Bar of Oklahoma,* 185 Okl. 505, 95 P.2d 113, 115 (1939).

6. *Eakin, supra* note 5, at ¶ 8, at 648; *State ex rel. Okl. Bar Ass'n v. Downing,* 1990 OK 102, ¶ 12, 804 P.2d 1120, 1122–1123; *Raskin, supra* note 3, at ¶ 11, at 265–266.

7. *Leigh, supra* note 5, at ¶ 11, at 666; *Eakin, supra* note 5, at ¶ 8, at 647–648; *State ex rel. Okl. Bar Ass'n v. Lloyd,* 1990 OK 14, ¶ 8, 787 P.2d 855, 858; *State ex rel. Okl. Bar Ass'n v. Stubblefield,* 1988 OK 141, ¶ 7, 766 P.2d 979, 982; *State ex rel. Okl. Bar Ass'n v. Cantrell,* 1987 OK 17, ¶ 1, 734 P.2d 1292, 1293.

8. *Eakin, supra* note 5, at ¶ 8, at 648; *Raskin, supra* note 3, at ¶ 11, at 265. The court's range of options in a disciplinary proceeding is set forth in RGDP Rule 6.15(a):

> (a) The Supreme Court may approve the Trial Panel's findings of fact or make its own independent findings, impose discipline, dismiss the proceedings or take such other action as it deems appropriate.

9. *Bolton, supra* note 5, at ¶ 15, at 344; *Eakin, supra* note 5, at ¶ 8, at 648; *State ex rel. Okl. Bar Ass'n v. Farrant,* 1994 OK 13, ¶ 7, 867 P.2d 1279, 1284.

10. The terms of RGDP Rule 6.13 provide in part:

> Within thirty (30) days after the conclusion of the hearing, the Trial Panel shall file with the Clerk of the Supreme Court a written report which shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law (including a recommendation as to discipline, if such is found to be indicated, and a recommendation as to whether the costs of the investigation, record and proceedings should be imposed on the respondent), and shall be accompanied by all pleadings, a transcript of the proceeding, and all exhibits offered thereat. . . .

11. *Eakin, supra* note 5, at ¶ 9, at 648; *Bolton, supra* note 5, at ¶ 16, at 345; *State ex rel. Okl. Bar Ass'n v. Perceful,* 1990 OK 72, ¶ 5, 796 P.2d 627, 630.

12. In a 8 September 1998 letter to the Bar, Arthur indicated that all of the loans were extended when he stood in an attorney-client relationship to the Detricks.

Detrick[13] two more loans in the amounts of $4,500 and $3,000, neither of which transactions was memorialized by an agreement in writing.[14] All three loans were unsecured. It was Mrs. Detrick's understanding that Arthur would make timely repayments at a 7% annual interest rate. The terms of the latter two loans were not reduced to writing[15] and sent to Mrs. Detrick. Nor did Arthur request that she seek the advice of independent legal counsel to protect her interests.[16] The record does not reveal that Arthur obtained the written consent of his clients, a step that is required by ORPC Rule 1.8(a)(3).[17]

¶ 8 Arthur failed to repay the loans despite repeated reassurances he would do so. Mrs. Detrick eventually sought the assistance of another lawyer to help her secure repayment of the obligation that was then in default. Only after Mrs. Detrick contacted the Bar, and professional disciplinary proceedings were imminent, did Arthur make arrangements to repay the loans.[18]

## IV

## ENTERING A BUSINESS TRANSACTION WITH A CLIENT

█ ¶ 9 The Bar has charged Arthur with violating ORPC Rule 1.8(a)[19] by entering into a business transaction with a client without complying with the prescribed method for avoiding a potential conflict of interest between himself and the client. This allegation stands coupled with one that to the disadvantage of the clients and in breach of ORPC Rule 1.8(b)[20] Arthur used financial information gleaned in the course of his representation.

█ ¶ 10 While representing a client a lawyer is often privy to financial information that may lead the legal practitioner to approach a client about entering into a business transaction.[21] Once in a disciplinary hearing evidence of a lawyer/client business transaction is adduced by clear and convincing evidence,[22] the burden shifts to the attorney to show that the business dealing in question was indeed free from legal taint.

¶ 11 *Arthur admits that he procured a loan from his client without complying with the procedure prescribed by Rule 1.8(a) and (b). By his conduct Arthur has impermissibly used information obtained in the course of client representation with a view to entering into a business transaction for a purely personal purpose.* There is here no question about the respondent's breach of professional discipline. The sole issue is whether a more severe sanction should be imposed.

¶ 12 On *de novo* consideration, we adopt the PRT's findings of fact and conclusions of law, holding that more severe discipline is warranted because respondent entered into a business transaction with a client and used

---

13. The grievance filed by Mrs. Detrick with the Bar outlines the nature of the agreement. In 1995 Arthur approached Mr. Detrick for the first loan and Mrs. Detrick in 1996 for the other two. According to Mrs. Detrick's grievance, her husband died sometime in 1996, possibly before Arthur's request for the latter two loans.

14. Mrs. Detrick furnished copies of two checks (dated 31 January 1996 and 22 May 1996) payable to Arthur. Both checks were identified as loans in the memo section of the document.

15. *See* ORPC Rule 1.8(a)(1), *supra* note 3.

16. *See* ORPC Rule 1.8(a)(2), *supra* note 3.

17. For the pertinent terms of ORPC Rule 1.8(a)(3), *supra* note 3.

18. The grievance filed by Mrs. Detrick is dated 4 June 1998. Arthur responded by a letter dated 17 August 1998 in which he disclosed that his distressed financial circumstances prevented his repayment of the loans. At that time, Arthur owed approximately $27,000 to credit card companies, which he presumably accumulated due to "several years of little or no income." He paid off the loans 18 February 1999.

19. For the pertinent text of Rule 1.8(a), see *supra* note 3.

20. For the pertinent text of Rule 1.8(b), see *supra* note 4.

21. *State ex rel. Okl. Bar Ass'n. v. Cross*, 1996 OK 131, 932 P.2d 1107, 1109.

22. *Id. See also State ex rel. Okl. Bar Ass'n. v. Gray*, 1997 OK 140, 948 P.2d 1221, 1226; *State ex rel. Okl. Bar Ass'n. v. Perkins*, 1988 OK 65, 757 P.2d 825, 828.

information gained in the course of representation to the client's disadvantage.

## V

## A THIRTY–DAY SUSPENSION IS AN APPROPRIATE SANCTION FOR RESPONDENT'S PROFESSIONAL MISCONDUCT

¶ 13 The primary purpose for imposing professional discipline is not to punish the offender but to protect the public by a thorough inquest into the respondent's continued fitness to practice law.[23] Imposition of discipline is designed to foster these aims rather than to be a purely punitive measure for a lawyer's misconduct. Mitigating circumstances may be considered in assessing the quantum of discipline that is appropriate.[24]

¶ 14 As for mitigating factors, we are reliably informed that respondent has repaid the borrowed funds [25] and cooperated throughout the disciplinary proceedings. Respondent's professional record reflects neither previous blemishes nor a pattern of misconduct. Moreover, the record shows that respondent's misconduct neither resulted from a client's deception nor caused grave economic harm.[26]

¶ 15 Although both the PRT and the Bar recommend that respondent be privately reprimanded (and that he bear the costs of these proceedings), the court is of the view and holds that the *severity* of the offence (*combined with a lack of compelling mitigating factors*) warrants a license suspension for thirty days.

¶ 16 Respondent's misconduct results from three separate violations of the ORPC. Upon *de novo* review, the court concludes that there is clear and convincing evidence of respondent's violations charged in the complaint. In appropriate instances an attorney may be disciplined more severely than the PRT and Bar have recommended. This is especially true when the degree of discipline the court imposes is consistent with other decisions in like cases.

¶ 17 Respondent's license to practice law is accordingly suspended for thirty days and he shall pay the costs of this proceeding—in the sum of $227.23—not later than ninety days *after* this opinion becomes final.

¶ 18 SUMMERS, C.J., and LAVENDER, KAUGER, WATT, and BOUDREAU, JJ., concur.

¶ 19 HARGRAVE, V.C.J., and HODGES, J., concur in part and dissent in part.

HODGES, J., concurring in part and dissenting in part.

¶ 1 I would impose a public reprimand.

23. *State ex rel. Okl. Bar Ass'n v. Wallace*, 1998 OK 65, ¶ 22, 961 P.2d 818, 826; *State ex rel. Okl. Bar Ass'n v. Bolton*, 1994 OK 53, ¶ 15, 880 P.2d 339, 344; *Donnelly, supra* note 5, at ¶ 14, at 546; *State ex. rel. Okl. Bar Ass'n v. Colston*, 1989 OK 74, ¶ 20, 777 P.2d 920, 925; *Raskin, supra* note 5 at 267.

24. *Raskin, supra* note 5 at 267.

25. The use of lenient discipline for the purpose of encouraging restitution cannot be sanctioned because it conflicts with the paramount goal of preserving public confidence in the entire bar. *Raskin, supra* note 5 at 267.

26. Although the record reflects that Arthur "made payment in full to Mrs. Detrick" *after* the disciplinary proceedings began, his default has doubtless caused some economic harm because (a) Mrs. Detrick had to seek the assistance of another lawyer to secure the money's return; and (b) there is no indication in the record whether the repayment included any interest income. The parties' joint brief states that respondent intended that his client enjoy a higher rate of interest than she was earning. This argument defies financial sense. Unsecured, non-recourse loans that are not reduced to a promissory note represent a significant economic risk to a lender.