2009 OK 74

STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant

v.

W. Kirk CLAUSING, Respondent.

Nos. SCBD–5443, OBAD–1761.

Supreme Court of Oklahoma.

Sept. 29, 2009.

Gina L. Hendryx, General Counsel, Janis Hubbard, First Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Complainant.

W.E. Sparks, Gary A. Eaton, Tulsa, OK, for Respondent.

OPALA, J.

¶ 1 In this disciplinary proceeding against a lawyer, the issues to be decided are: (1) Does the record submitted for our examination provide sufficient evidence for a meaningful *de novo* consideration of the complaint and of its disposition? [1] and (2) Is a suspension from the practice of law for six months an appropriate disciplinary sanction for respondent's breach of professional ethics? **We answer the first question in the affirmative and the second in the negative.**

---

**1.** The record consists of the Bar's complaint, respondent's answer and trial brief, a transcript of the hearing held before a trial panel of the Professional Responsibility Tribunal, exhibits offered by both parties, which were admitted into evidence at the hearing, the parties' stipulations of fact, agreed conclusions of law, concession as to factors to be considered in mitigation and enhancement of the charges, the trial panel's report and the Bar's application to assess costs against respondent.

## I

## INTRODUCTION TO THE RECORD

¶2 The Oklahoma Bar Association (Bar) commenced this disciplinary proceeding on 15 August 2008 against W. Kirk Clausing (respondent or Clausing), a licensed lawyer, by filing a formal complaint in accordance with the provisions of Rule 6.1 of the Rules Governing Disciplinary Proceedings (RGDP).[2] The complaint alleges in one count violations of the RGDP and of the Oklahoma Rules of Professional Conduct (ORPC).[3] A trial panel of the Professional Responsibility Tribunal (trial panel or panel) conducted hearings (the PRT hearings) on 6 January 2009 to consider the charges. It recognized for the record the parties' stipulations and agreed conclusions of law. Left unresolved by the parties' stipulations was the discipline to be suggested for imposition. Respondent concedes (by stipulation) that his conduct violates RGDP Rule 1.3 [4] and ORPC Rules 1.1,[5] 1.7 [6] and 1.8.[7]

¶3 Upon completion of the hearing and consideration of the stipulations and testimony on file, the trial panel issued its report (which incorporates the parties' stipulations, but rejects certain tendered statements as not supported by the law and record),[8] finding that respondent violated certain provi-

2. The Rules Governing Disciplinary Proceedings are in 5 O.S.2001, Ch.1, App. 1–A. The provisions of RGDP Rule 6.1 state:

> The proceeding shall be initiated by a formal complaint prepared by the General Counsel, approved by the Commission, signed by the chairman or vice-chairman of the Commission, and filed with the Chief Justice of the Supreme Court.

3. The Oklahoma Rules of Professional Conduct are in 5 O.S.2001, Ch. 1, App. 3–A.

4. The terms of RGDP Rule 1.3 provide:

> The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.

5. The terms of ORPC Rule 1.1 provide:

> **A lawyer shall provide competent representation to a client.** Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.
> (emphasis added)

6. The terms of ORPC Rule 1.7 provide:

> (a) Except as provided in paragraph (b), **a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.** A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent, confirmed in writing.
> (emphasis added)

7. The terms of ORPC Rule 1.8 provide:

> (a) A lawyer **shall not enter into a business transaction with a client** or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client **unless:**
> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and **are fully disclosed and transmitted in writing to the client** in a manner that can be reasonably understood by the client;
> (2) the **client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction;** and
> (3) the **client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction,** including whether the lawyer is representing the client in the transaction.
> (b) A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules.
> (emphasis added)

8. The trial panel rejected certain statements in the stipulations as not supported by the law and

sions of the rules of professional conduct. The panel recommended that the respondent be suspended from the practice of law for six months and that he pay the costs imposed in this proceeding.

## II

## THE RECORD BEFORE THE COURT PROVIDES SUFFICIENT EVIDENCE FOR A MEANINGFUL *DE NOVO* CONSIDERATION OF ALL FACTS RELEVANT TO THIS PROCEEDING

¶4 In a bar disciplinary proceeding the court functions as an adjudicative licensing authority that exercises exclusive original cognizance.[9] Its jurisdiction rests on the court's constitutionally vested, nondelegable power to regulate the practice of law, includ-

ing the licensure, ethics, and discipline of this state's legal practitioners.[10] In deciding whether discipline is warranted and what sanction, if any, is to be imposed for the misconduct charged, the court conducts a full-scale, nondeferential, *de novo* examination of all relevant facts,[11] in which the conclusions and recommendations of the trial panel are neither binding nor persuasive.[12] In this undertaking we are not restricted by the scope-of-review rules that govern corrective relief on appeal or on certiorari, proceedings in which another tribunal's findings of fact may have to be left undisturbed by adherence to law-imposed standards of deference.[13]

¶5 The court's duty can be discharged only if the trial panel submits to us a complete record of the proceedings.[14] Our

evidence—*i.e.*, (1) respondent's use of the terms "loan" and "borrow" in characterizing his unauthorized acts of withdrawing money from the Kulp Trust; (2) his reference to the payment of unearned trustee fees as "legitimate;" (3) the statement that respondent's management of the Kulp Trust was "careful, prudent and safe;" (4) the statement that the trust was never in jeopardy and did not suffer financial harm; and (5) the statement that respondent did not attempt to conceal or misrepresent the acts of taking money from the trust. The trial panel concluded the evidence is insufficient to establish a violation of Rule 1.1.

9. *State ex rel. Okla. Bar Ass'n v. Leigh*, 1996 OK 37, ¶11, 914 P.2d 661, 666; *State ex rel. Okla. Bar Ass'n v. Eakin*, 1995 OK 106, ¶8, 914 P.2d 644, 647; *State ex rel. Okla. Bar Ass'n v. Bolton*, 1994 OK 53, ¶15, 880 P.2d 339, 344; *State ex rel. Okla. Bar Ass'n v. Donnelly*, 1992 OK 164, ¶11, 848 P.2d 543, 545; *State ex rel. Okla. Bar Ass'n v. Raskin*, 1982 OK 39, ¶11, 642 P.2d 262, 265; *In re Integration of State Bar of Oklahoma*, 1939 OK 378, 95 P.2d 113, 115.

10. *State ex rel. Okla. Bar Ass'n v. Eakin*, supra note 9 at ¶8, 914 P.2d at 648; *State ex rel. Okla. Bar Ass'n v. Downing*, 1990 OK 102, ¶12, 804 P.2d 1120, 1122–1123; *State ex rel. Okla. Bar Ass'n v. Raskin*, supra note 9 at ¶11, 642 P.2d at 265–266.

11. *State ex rel. Okla. Bar Ass'n v. Leigh*, supra note 9, at ¶8, 914 P.2d at 648; *State ex rel. Okla. Bar Ass'n v. Eakin*, supra note 9 at ¶8, 914 P.2d at 647–648; *State ex rel. Okla. Bar Ass'n v. Lloyd*, 1990 OK 14, ¶8, 787 P.2d 855, 858; *State ex rel. Okla. Bar Ass'n v. Stubblefield*, 1988 OK 141, ¶7, 766 P.2d 979, 982; *State ex rel. Okla. Bar Ass'n v. Cantrell*, 1987 OK 17, ¶1, 734 P.2d 1292, 1293; *State ex rel. Okla. Bar Ass'n v. Brandon*, 1969 OK

28, ¶5, 450 P.2d 824, 827. Because this court's cognizance of disciplinary proceedings cannot be shared with any other institution, every aspect of the Bar's adjudicative process must be revisited by our *de novo* consideration. The attribute of nondelegable jurisdiction serves to distinguish the conduct of bar disciplinary functions from trial *de novo*—a retrial in a different court—or even from *de novo* appellate review on the record, which stands for an independent, non-deferential examination *of another tribunal's record.*

12. *State ex rel. Okla. Bar Ass'n v. Eakin*, supra note 9 at ¶8, 914 P.2d at 648; *State ex rel. Okla. Bar Ass'n v. Raskin*, supra note 9 at ¶11, 642 P.2d at 265. The court's range of options in a disciplinary proceeding is set forth in RGDP Rule 6.15(a), 5 O.S.2001, Ch.1, App. 1–A, which states in pertinent part:

   "The Supreme Court may approve the Trial Panel's findings of fact or make its own independent findings, impose discipline, dismiss the proceedings or take such other action as it deems appropriate."

13. *State ex rel. Okla. Bar Ass'n v. Bolton*, supra note 9 at ¶15, 880 P.2d at 344; *State ex rel. Okla. Bar Ass'n v. Eakin*, supra note 9 at ¶8, 914 P.2d at 648; *State ex rel. Okla. Bar Ass'n v. Farrant*, 1994 OK 13, ¶7, 867 P.2d 1279, 1284; *Levi v. Mississippi State Bar*, 436 So.2d 781, 782 (Miss. 1983).

14. The provisions of RGDP Rule 6.13, 5 O.S. 2001, Ch. 1, App.1–A, state in pertinent part:

   "Within thirty (30) days after the conclusion of the hearing, the Trial Panel shall file with the Clerk of the Supreme Court a written report which shall contain the Trial Panel's findings

initial task is to ascertain whether the tendered record is sufficient to permit (1) this court's independent determination of the facts and (2) its task of fashioning an appropriate discipline. The latter is that which (a) is consistent with the discipline imposed upon other lawyers who have committed similar acts of professional misconduct and (b) avoids the vice of visiting disparate treatment on the offending lawyer.[15]

¶ 6 Having carefully scrutinized the record submitted to us in this proceeding, we conclude that it is adequate for *de novo* consideration of respondent's alleged professional misconduct.

## III

### THE CHARGES AGAINST RESPONDENT

#### Count I—The Kulp Complaint

¶ 7 The charges against respondent arise from his handling of a spendthrift trust (Kulp Trust) established by Virginia K. Kulp, now deceased, for the benefit of her son, Jon Kulp (the life income beneficiary), and the remainder beneficiaries. Respondent had represented Mrs. Kulp over the years, advising her on tax matters, and preparing for her a will and a revocable trust. He prepared the Kulp Trust at her request in 1995 and served as a co-trustee at the trust's inception. He later succeeded as the sole trustee when the other co-trustee resigned in February 2007.[16] The Kulp Trust funds were held in a cash management account at Merrill Lynch. Respondent was the primary decisionmaker for the types of investment to be made. In his capacity as trustee, **respondent made two unauthorized withdrawals of trust funds for his personal use** from the cash management account and **paid trustee fees to himself in advance of earning those fees.**

¶ 8 **The May 2007 withdrawal.** Respondent made the first unauthorized withdrawal on 18 May 2007 for $18,000 and noted on the check that it was for a "loan." On 29 May 2007 he made a partial repayment to the Kulp Trust of $8,000. He took money from the trust fund to relieve a personal financial crisis caused by an IRS notice of a lien levy on his office account. The withdrawn trust funds were used to pay his personal federal employment tax liability.

¶ 9 **The July 2007 withdrawal.** On 24 July 2007 respondent wrote a second unauthorized check on the Kulp Trust account for $27,500. According to respondent, the money was used to make a personal investment in a business opportunity—a stock subscription to an initial public offering. Trust funds were needed because the money he had intended to use for payment to Merrill Lynch of the subscription price had not arrived in time to meet the payment deadline. Three days later respondent repaid the Kulp trust $27,500 plus $50 interest.

¶ 10 **The advancement of trustee fees.** Respondent admits he had advanced the payment to himself of trustee fees before rendering the services. According to the record, this had been the practice of the Kulp co-trustees in previous years. He explained that the trustee fee was based on three-fourths of one percent of the average value of the trust. The fee advancements were made quarterly in an amount based upon this formula.

¶ 11 When the beneficiaries discovered that respondent had made unauthorized withdrawals of trust funds, they demanded by letter of 28 September 2007 that he **resign** as trustee, **remit** the balance of the unpaid withdrawal and of any unearned trustee fees and **transfer** all trust records to a lawyer who had been engaged to assist them.

of fact on all pertinent issues and conclusions of law (including a recommendation as to discipline, if such is found to be indicated, and a recommendation as to whether the costs of the investigation, record and proceedings should be imposed on the respondent), and shall be accompanied by all pleadings, a transcript of the proceeding, and all exhibits offered thereat...."

**15.** *State ex rel. Okla. Bar Ass'n v. Eakin, supra* note 9 at ¶ 9, 914 P.2d at 648; *State ex rel. Okla.*

*Bar Ass'n v. Bolton, supra* note 9 at ¶ 16, 880 P.2d at 345; *State ex rel. Okla. Bar Ass'n v. Perceful,* 1990 OK 72, ¶ 5, 796 P.2d 627, 630.

**16.** Upon the co-trustee's resignation in February 2007, respondent became the sole trustee with authority to initiate expenditures. According to the Kulp grievance, the beneficiaries of the Kulp trust were neither notified of the co-trustee's resignation nor given any explanation for that act.

Respondent submitted his resignation by letter of 3 October 2007 and turned over the requested records. On 9 October 2007 respondent repaid the Kulp Trust $10,000 for the balance owed on the first withdrawal plus interest of $300 and for the unearned trustee fees ($660.84). On 28 November 2007 the beneficiaries filed a Bar grievance against respondent. They described the May and July withdrawals as serious breaches of the trust as well as violations of the Oklahoma Trust Act (60 O.S.2001 § 9).[17] They claimed the advance withdrawals of "prepaid trustee fees" were "repetitive self-serving personal loans to the trustee to the detriment of the Trust and its beneficiaries."

## IV

### A LAWYER WHO SERVES IN A DUAL CAPACITY AS A LAWYER AND TRUSTEE MUST ADHERE TO ETHICAL RULES WHICH GOVERN THE CONDUCT REQUIRED OF LAWYERS

██ ¶ 12 *Vis-a-vis* the Kulp Trust respondent acted in a dual capacity. He performed

legal services by *advising* the settlor and *drafting* the trust document in which he was named a co-trustee. He also served in a fiduciary capacity *qua* co-trustee of the Kulp Trust. A lawyer who commingles the role of a lawyer with that of a fiduciary is not immune to and cannot escape disciplinary action for a breach of fiduciary duty occurring *dehors* the practice of law.[18] He or she will be held both to the ethical standards for lawyers as well as to those governing fiduciaries.[19]

### Respondent's Fiduciary Duty in Handling the Kulp Trust

██ ¶ 13 A trustee is a fiduciary of the highest order in whom the hope and confidence of the settlor are placed with the expectation that the trustee will exercise the obligations of the office for the exclusive benefit of the *cestui que trust*.[20] To the *cestui que trust* a trustee always owes *uber-*

---

17. The terms of 60 O.S.2001 § 9 are:
    Except as provided in Section 10, no corporate trustee shall lend trust funds to itself or an affiliate, or to any director, officer, or employee of itself or of an affiliate; **nor shall any noncorporate trustee lend trust funds to himself,** or to his relative, employer, employee, partner, or other business associate.
    (emphasis added)

18. *State ex rel. Okla. Bar Ass'n v. Wallace,* 1998 OK 65, ¶ 22, 961 P.2d 818, 826, citing Application of Mailath, 1988 OK 19, ¶ 44, 752 P.2d 803, 812, in which this court quoted approvingly from *Sodikoff v. State Bar of California,* 14 Cal.3d 422, 121 Cal.Rptr. 467, 535 P.2d 331, 335 (1975): "When an attorney assumes a fiduciary relationship and violates his duty in a manner that would justify disciplinary action if the relationship had been that of attorney and client, **he may properly be disciplined for his misconduct.**" (emphasis added). *See, e.g., Cutler v. State Bar,* 71 Cal.2d 241, 78 Cal.Rptr. 172, 455 P.2d 108, 114 (1969); *Florida Bar v. Rhodes,* 355 So.2d 774, 775 (Fla. 1978); *In re Melin,* 410 Ill. 332, 102 N.E.2d 119, 121 (1951); *State ex rel. Nebraska State Bar Ass'n v. Bremers,* 200 Neb. 481, 264 N.W.2d 194, 197 (1978). See in this connection the comment to § 5 of the Restatement (Third) of Law Governing Lawyers, which states in part: "Professional duties defined in lawyer codes are mainly concerned with lawyer functions performed by a lawyer in the course of representing a client and causing harm to the client, to a legal institution

such as a court, or to a third person. **Those duties extend further, however, and include some lawyer acts that, even if not directly involving the practice of law, draw into question the ability or willingness of the lawyer to abide by professional responsibilities.**" Comment b to § 5 (emphasis added).

19. *State ex rel. Okla. Bar Association v. Franklin,* 2007 OK 18, 163 P.3d 507 (a lawyer violated his fiduciary duties while acting as the trustee of a trust); *State ex rel. Okla. Bar Ass'n v. Wallace, supra* note 18, at ¶ 22, 961 P.2d at 826; *see also Florida Bar v. Rhodes, supra* note 18 at 775; *In re Melin, supra* note 18 at 121; *State ex rel. Nebraska State Bar Ass'n v. Bremers, supra* note 18 at 197.

20. *State ex rel. Okla. Bar Ass'n v. Wallace, supra* note 18, 961 P.2d at 826; *First National Bank of Wichita Falls v. Stricklin,* 1959 OK 208, 347 P.2d 652. "The relation between the trustee and the beneficiary being a fiduciary relation, the standard of conduct required of the trustee is higher than that required of persons who are not in a fiduciary relation." Restatement (Second) of Trusts § 170, comment. In *Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545, 546 (1928), the court, speaking through Cardozo, C.J., eloquently addressed the essence of a fiduciary's duty: "Many forms of conduct permissible in a workaday world for those acting at arm's length ... are forbidden to those bound by fiduciary ties. **A**

*rima fides* (utmost good faith).[21]

■■■■ ¶ 14 A trustee must act with undivided loyalty to the beneficiaries.[22] A gross breach of loyalty occurs when a trustee engages in **self-dealing** by **unauthorized withdrawals** of trust funds for the trustee's personal use.[23]

■■■■ ¶ 15 When a legal practitioner who occupies the position of trustee breaches that fiduciary obligation through mismanagement of the trust, that practitioner brings the legal profession into disrepute and, as a result, subjects himself (or herself) to bar discipline for acts contrary to prescribed standards of conduct.[24] RGDP 1.3 commands

that lawyers engage in behavior that helps maintain the reputable status of the entire legal profession.[25] Strong and unswerving commitment to the value and virtue of fiduciary loyalty is a *sine qua non* of the personal characteristics lawyers must have.[26] A lawyer's breach of fiduciary loyalty signifies that he (or she) is incompetent to stand in the fiduciary role.

¶ 16 Respondent *qua* trustee had a fiduciary duty to invest and manage funds in the Kulp Trust "solely in the interest of the beneficiaries"[27] and not to place his own interests above those of the beneficiaries. He was a "trustee ... held to something stricter than the morals of the market

trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." (emphasis added).

21. Black's law dictionary 1690 (Revised 4th ed.1968) translates *uberrima fides* as "the most abundant good faith; absolute and perfect candor or openness and honesty." *State ex rel. Okla. Bar Ass'n v. Wallace, supra* note 18, at ¶ 22, 961 P.2d at 826.

22. The terms of 60 O.S.2001 § 175.65 (Oklahoma Uniform Prudent Investor Act (OUPIA)) provide:
"Loyalty. A trustee shall invest and manage the trust assets solely in the interest of the beneficiaries."
This section derives primarily from Restatement (Third) of Trusts: Prudent Investor Rule § 170 (1992). "The **foundation for this section is the duty of loyalty which prohibits the trustee from engaging in self-dealing** or administering the trust in the interest of any parties who are not beneficiaries." Oklahoma Comments to 60 O.S. 2001 § 175.65 (emphasis added). The general comment to § 90 of the Restatement (Third) of Trusts states in pertinent part: "Except as otherwise provided by the terms of the trust ..., the trustee has a duty to preserve the trust property ... and to make it productive.... In doing so the trustee must exercise reasonable care, skill, and caution ... and must act with **undivided loyalty to the beneficiaries.**" (emphasis added)

23. *State ex rel. Okla. Bar Ass'n v. Wallace, supra* note 18, at ¶ 22, 961 P.2d at 826. See in this connection § 78(2) of the Restatement (Third) of Trusts, which states that "[e]xcept in discrete circumstances, the trustee is strictly prohibited from engaging in transactions that involve **self-dealing** or that otherwise involve or **create a conflict between the trustee's fiduciary duties and personal interests.**" (emphasis added). The comment to § 78(2), *supra*, notes that "[w]ith

limited exceptions ... the rule of Subsection (2) **strictly prohibits the trustee from entering into transactions involving the trust property**, or affecting its investment or management, **if the transaction is for the trustee's personal account (self-dealing)** or otherwise involves **or creates a conflict between the fiduciary duties and personal interests of the trustee** ..., unless authorized: by a proper court ...; expressly or impliedly by the terms of the trust ...; or by all of the beneficiaries ...." (emphasis added). Comment g(1) to § 91 of the Restatement (Third) of Trusts notes that trust provisions which grant the trustee broad discretion **do not "allow the trustee personally to borrow from the trust estate in violation of the normal duty of undivided loyalty...."** (emphasis added)

The Restatement view is reflected in 60 O.S.2001 § 175.9 (**Oklahoma Trust Act**). The terms of § 175.9 provide: "Except as provided in Section 10, no corporate trustee shall lend trust funds to itself or an affiliate, or to any director, officer, or employee of itself or of an affiliate; **nor shall any noncorporate trustee lend trust funds to himself, or to his relative, employer, employee, partner, or other business associate.**" (emphasis supplied).

24. *State ex rel. Oklahoma Bar Ass'n v. Andre,* 1998 OK 29, ¶ 12, 957 P.2d 545, 548 (the terms of RGDP Rule 1.3 command lawyers to engage in behavior that helps maintain the reputable status of the legal profession).

25. *State ex rel. Oklahoma Bar Ass'n v. Dobbs,* 2004 OK 46, ¶ 20, 94 P.3d 31; *State ex rel. Oklahoma Bar Ass'n v. Groshon,* 2003 OK 112, 82 P.3d 99.

26. *State ex rel. Okla. Bar Ass'n v. Wallace, supra* note 18, 961 P.2d at 826.

27. 60 O.S.2001 § 175.65, *supra* note 22.

place."[28]

¶ 17 As an attorney respondent should have been mindful of the strict standards of conduct to which a fiduciary is expected to adhere. The evidence clearly shows that respondent did not act within the prescribed standards of conduct mandated for a trustee. He took advantage of his position by "dipping" into trust funds for his own personal use in violation of his strict duty of loyalty to the trust beneficiaries.

¶ 18 Respondent failed to demonstrate competence in his handling of the Kulp Trust with respect to the trust funds that he withdrew for his personal use. He endangered the trust by taking money from the Kulp Trust without a written agreement or collateral.[29] Respondent's failure to act with reasonable competence constituted a marked departure from the standards of competence required of trustees and imposed by ORPC Rule 1.1.

¶ 19 Respondent admits that when he procured loans from the Kulp Trust while a co-trustee he did not comply with the procedure prescribed by RGPC Rule 1.8(a) and (b).[30] He did not consult with anyone before making the two withdrawals (which he described as personal loans). The trust beneficiaries had neither affirmatively consented to his withdrawal of trust funds for his personal use nor had they been advised to seek independent legal counsel to protect their interests. Respondent states that while he did not conceal or misrepresent the personal nature of these withdrawals, he did not affirmatively disclose the withdrawals to the Kulp Trust beneficiaries. By his conduct respondent impermissibly used information obtained from his representation of the Kulp Trust, entered into a business transaction for purely personal gain and precipitated a conflict of interest between his fiduciary duties and purely personal interests.

¶ 20 Respondent specifically admits to a violation of ORPC Rules 1.1, 1.7, 1.8 and RGDP Rule 1.3. We accept respondent's admission and find from clear and convincing evidence that his conduct, which violated those rules, constitutes grounds for the imposition of professional discipline.

## V

### FACTORS CALLING FOR THE ENHANCEMENT OF DISCIPLINE

¶ 21 Respondent received in 1995 a private reprimand from this court for (1) failure to act with reasonable diligence and promptness as the lawyer in two probate cases and (2) for failure to respond to the Bar in the course of its investigation.[31] Today's proceeding is respondent's second appearance before a disciplinary tribunal.

## VI

### CONCESSION AS TO AVAILABLE MITIGATION

¶ 22 Mitigating circumstances may be considered in assessing the appropriate quantum of discipline.[32] The trial panel report contains numerous factors to be considered in mitigation. (1) There is evidence that respondent repaid with interest the money he took from the trust corpus. (2) Respondent promptly and voluntarily turned over all information associated with the Bar's investigation and cooperated fully, completely and candidly at all times in the Bar's investigation of the grievance. (3) Respondent has acknowledged and accepted responsibility for his professional misconduct. (4) After respondent was notified about the

---

**28.** *Meinhard v. Salmon, supra* note 20, at 546.

**29.** *State ex rel. Oklahoma Bar Assn. v. Arthur,* 1999 OK 97, ¶ 14, n. 26, 991 P.2d 1026 (the court noted that "[u]nsecured, non-recourse loans that are not reduced to a promissory note represent a significant economic risk to a lender").

**30.** For the terms of RGPC Rule 1.8(a) and (b), see *supra* note 7.

**31.** On 10 July 1995 respondent received a private reprimand from the Oklahoma Supreme Court in case number OBAD # 1165, SCBD # 4023.

**32.** *State ex rel. Okla. Bar Ass'n v. Combs,* 2007 OK 65, ¶ 35, 175 P.3d 340, 351; *State ex rel. Okla. Bar Ass'n v. Giger,* 2001 OK 96, ¶ 8, 37 P.3d 856, 863–4.

Bar's investigation of the Kulp grievance, he instituted a program of monitoring on a monthly basis all other trust instruments through his defense counsel to insure that he was administering each instrument and performing its obligations as required by law. The record shows that respondent's misconduct did not cause grave economic harm.

¶ 23 We have taken these matters into account in fashioning the appropriate measure of discipline.

## VII

### DISCIPLINE TO BE IMPOSED

¶ 24 A government's license to practice law is conferred not for the benefit of the individual licensee, but rather for that of the public.[33] The disciplinary process, including the imposition of a sanction, is designed not to punish the delinquent lawyer, but to safeguard the interests of the public, those of the judiciary and of the legal profession.[34] Disciplinary sanctions serve not only to deter the offending lawyer from committing similar acts in the future, but also operate to put other practitioners on notice that departures from ethical norms will not be tolerated.[35] The measure of discipline imposed upon an offending lawyer should be consistent with the discipline visited upon other practitioners for similar acts of professional misconduct.[36]

¶ 25 The trial panel has recommended that respondent be suspended from the practice of law for six months. Respondent urges the court to fashion a disciplinary sanction that does not require a suspension of his license.[37] In support of a less severe sanction Respondent notes (1) the Bar made no recommenda-

tion for discipline either in its trial brief or at the PRT hearing, (2) there was no economic harm to the Kulp Trust or to its beneficiaries and (3) he promptly and voluntarily repaid with interest the improper withdrawals of trust funds. The Bar urges that respondent's misconduct *qua* trustee warrants the full measure of a six-month suspension.

¶ 26 This court has imposed varying degrees of discipline upon lawyers for violating some or all of the rules we found to have been violated by the respondent. Respondent's admitted (1) violations of fiduciary duty, involving failure to adhere to the fiduciary standards of conduct that are obligatory on a trustee, (2) the use of trust funds for his own personal purpose without anyone's consent or affirmative disclosure,[38] and (3) placing the trust fund in jeopardy by transactions that were neither put in writing nor collateralized. **These are indeed very serious offenses.**[39]

¶ 27 We conclude that a suspension for a period of one year, coupled with imposition of liability for costs incurred in this proceeding, is an appropriate measure of discipline to be imposed for the respondent's serious breach of professional discipline.

## VIII

### SUMMARY

¶ 28 In sum, the record bears clear and convincing proof that respondent's participation in unprofessional conduct violates the rules that govern professional responsibility. After a thorough review of the record and

---

33. *State ex rel. Okla. Bar Ass'n v. Giger, supra* note 32, at ¶ 18, 37 P.3d at 863–634.

34. *State ex rel. Okla. Bar Ass'n v. Lowe*, 1982 OK 20, ¶ 19, 640 P.2d 1361, 1363; *State ex rel. Okla. Bar Ass'n v. Smith*, 1980 OK 126, ¶ 21, 615 P.2d 1014, 1018.

35. *State ex rel. Okla. Bar Ass'n v. Cummings*, 1993 OK 127, ¶ 29, 863 P.2d 1164, 1174; *State ex rel. Okla. Bar Ass'n v. Hall*, 1977 OK 117, ¶ 12, 567 P.2d 975, 978.

36. *State ex rel Okla. Bar Ass'n v. Giger, supra* note 32.

37. As an alternative to suspension respondent suggests that he be ordered to work with the Bar in sponsoring a series of continuing legal education programs addressing ethical matters in client representation, particularly in the area of estate and trust management.

38. *State ex rel. Oklahoma Bar Association v. Franklin, supra* note 19.

39. *State ex rel. Oklahoma Bar Assn v. Arthur, supra* note 29, at ¶ 14, n. 26, 991 P.2d 1026.

upon due recognition of all the factors tendered to us in mitigation,

¶ 29 RESPONDENT IS ORDERED DISCIPLINED (1) BY SUSPENSION FROM THE PRACTICE OF LAW FOR A PERIOD OF ONE YEAR AND (2) BY IMPOSITION OF COSTS OF THIS PROCEEDING, WHOSE PAYMENT SHALL BE DUE NOT LATER THAN NINETY DAYS AFTER THIS OPINION BECOMES FINAL.

¶ 30 EDMONDSON, C.J., and OPALA, KAUGER, WATT, WINCHESTER, COLBERT, REIF, JJ., concur.

¶ 31 TAYLOR, V.C.J., dissents.

¶ 32 HARGRAVE, J., not participating.

¶ 33 TAYLOR, V.C.J., dissenting

I would disbar this lawyer. He was a trustee. He stole money from this trust and fully repaid it **only** when he was discovered and confronted. The most efficient and effective remedy to insure the protection of the public interest and the legal profession is to disbar him. This lawyer has been the subject of bar discipline in the past. This is not his first trip before this Court and it should be his last.