*240 COMBS, C.J.,
with whom WINCHESTER and COLBERT, JJ., join, dissenting:
¶ 1 The purpose of attorney disciplinary proceedings is to protect the public and the integrity of the legal profession. State ex rel. Okla. Bar Ass’n v. Friesen, 2016 OK 109, ¶ 8, 384 P.3d 1129; State ex rel. Okla. Bar Ass’n v. Mirando, 2016 OK 72, ¶ 3, 376 P.3d 232; State ex rel. Okla. Bar Ass’n v. Gassaway, 2008 OK 60, ¶ 3, 196 P.3d 496. The Court also aims for consistency in the imposition of discipline. State ex rel. Okla. Bar Ass’n v. Kinsey, 2009 OK 31, ¶ 13, 212 P.3d 1186; State ex rel. Okla. Bar Ass’n v. Groshon, 2003 OK 112, ¶ 6, 82 P.3d 99. Today’s decision fails to comport with both goals and is not in keeping with this Court’s precedent concerning attorney disciplinary proceedings. I therefore respectfully dissent.
I.
A SIGNED GRIEVANCE IS NOT REQUIRED FOR THE OBA TO INVESTIGATE ALLEGED ATTORNEY MISCONDUCT OR FOR DISCIPLINARY PROCEEDINGS TO MOVE FORWARD.
¶ 2 First, the majority incorrectly implies a written and signed grievance is a necessary prerequisite to any investigation into alleged attorney misconduct. That position is not in accord with the RGDP and not in accord with this Court’s precedent. In footnote 2, the majority opinion limits the extent of Rule 6.1 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2011, Ch. 1, App. 1-A, by ignoring specific and important language in the rule. It is the second portion of Rule 5.1(a) which applies to this cause:
(a) Each grievance or request for investigation (grievances and requests for investigation both being hereinafter referred to as a “grievance”) involving a lawyer or involving the unauthorized practice of law, shall be in writing and signed by the person filing the same, except that the General Counsel or the Commission may, in their discretion, institute an investigation on the basis of facts or allegations involving a lawyer or the unauthorized practice of law brought to their attention in any manner whatsoever. A lawyer or any other person will be immediately notified of the receipt of a grievance and furnished a copy thereof. (Emphasis added).
Rule 6.1 gives the OBA discretionary authority to investigate allegations against an attorney brought to their attention “in any manner whatsoever,” The overarching goal of protecting the public and the integrity of the legal profession is best served when the OBA is able to investigate legitimate concerns about an attorney’s conduct regardless of the manner in which those concerns are brought to their attention.
II.
A PUBLIC CENSURE IS INSUFFICIENT DISCIPLINE GIVEN THE SERIOUSNESS AND EXTENT OF RESPONDENT’S MISCONDUCT, REGARDLESS OF BROOKS’ SATISFACTION AND OTHER ALLEGED MITIGATING FACTORS.
¶ 3 The concerns raised in the letter sent to the OBA were legitimate. The majority opinion finds clear and convincing evidence in the record that Respondent violated Rules 1.1,1.3,1.4, 1.8, 1.15, and 8.4, ORPC, 5 O.S. 2011, Oh. 1, App. 3-A, as well as Rule 1.3, RGDP. In other words, this Court finds Respondent committed almost all of the rule violations alleged by the Complainant. However, the majority opinion takes a “no harm, no foul” approach to attorney discipline, relying on Brooks’ overall satisfaction with Respondent’s conduct to justify both no discipline beyond a public censure as well as its refusal to award costs.[1]
*241 ¶ 4 Since the goal of attorney disciplinary proceedings is to protect the public and the integrity of the legal profession, lack of a grievance from a client and the client’s overall satisfaction with an attorney’s actions do not excuse multiple violations of the rules of the ORPC when those violations are brought to the attention of the OBA. Brooks’ overall satisfaction with Respondent’s conduct and failure to complain is without legal significance. In State ex rel. Okla. Bar Ass’n v. Taylor, 2000 OK 35, ¶ 29, 4 P.3d 1242, this Court stated:
While the client did not join in the complaint by pressing for respondent’s discipline, that aspect is without legal significance. Disciplinary judicature protects the public against lawyers whose professional misbehavior presents a risk to the served community as a whole-not just to individual clients or other complainants with standing as aggrieved persons.
Additionally, what the majority refers to as “technical violations” of the rules include acts such as the conversion of client funds. As this Court also stated in Taylor.
The attorney has exclusive domain over the management of entrusted funds. Keeping a client’s (or third party’s) money separate and distinct ensures that the money is at all times properly accounted for and can be shown to be distinct. This serves to prevent a lawyer from deliberately ‘or mistakenly using any of the entrusted funds. “In their daily work lawyers commonly come into clients’ funds. The trust placed in the lawyer owes its origin to the special professional status he occupies as a licensed practitioner. Public confidence in the practitioner is essential to the proper functioning of the profession. Pew breaches of ethics are as serious as the act of commingling a client’s [or third party’s] funds and the unwarranted use of his money.”
2000 OK 35, n.26, 4 P.3d 1242 (emphasis added) (quoting State ex rel. Okla. Bar Ass’n v. Raskin, 1982 OK 39, ¶ 14, 642 P.2d 262).
¶ 5 As the majority notes: Respondent’s “multiple rule violations and general carelessness during his representation of an elderly client reflect poorly on the legal profession.” Opinion of the Majority, 239. Respondent’s rule violations and. general conduct compel one conclusion: Respondent should have referred Brooks to independent outside counsel, both to prevent violations of the ORPC as well as to ensure she obtained competent representation to deal with her complex estate planning and care needs. Respondent potentially opened up Brooks’ property to his own liabilities.
¶ 6 There are indeed mitigating circumstances in this cause, but the appropriate discipline is more than a mere public reprimand. For some of the violations committed by Respondent, even in isolation, this Court typically imposes suspension for various periods. For example, this Court commonly imposes suspension for simple conversion of client funds, with the length dependent on the surrounding circumstances. In State ex rel. Okla. Bar Ass’n v. Mansfield, 2015 OK 22, 29, 350 P.3d 108, this Court suspended an attorney for eighteen months for commingling funds and committing simple conversion in violation of Rule 1.15, ORPC, when he overpaid himself fees and promptly used the money for personal expenses. However, that penalty was imposed in part because the attorney in question attempted to cover up his actions and in the process violated Rules 3.3 and 8.4, ORPC. By way of contrast, in another case involving simple conversion by error, State ex rel. Okla. Bar Ass’n v. Combs, 2007 OK 65, ¶ 37, 175 P.3d 340, this Court suspended an attorney for ninety days after determining the bar failed to demonstrate the attorney acted intentionally to defraud or deceive, and failed to show any harm to the client. Other examples include State ex rel. Okla. Bar Ass’n v. Parsons, 2002 OK 72, 57 *242 P.3d 865 and State ex rel. Okla. Bar Ass’n v. Cummings, 1993 OK 127, 863 P.2d 1164, where this Court imposed suspensions of one year on attorneys for commingling and simple conversion of funds.
¶ 7 In another example, State ex rel. Okla. Bar Ass’n v. Clausing, 2009 OK 74, 224 P.3d 1268, this Court suspended an attorney for one year for violations of Rules 1.1., 1.7, and 1.8, ORPC, and Rule 1.3, RGDP. The attorney in question violated his fiduciary duty as a trustee by using trust funds for his own personal use without consent and placing trust funds in jeopardy by transactions that were never put in writing. Clausing, 2009 OK 74, ¶ 26, 224 P.3d 1268. We characterized those actions as very serious offenses. Clausing, 2009 OK 74, ¶ 26, 224 P.3d 1268.
¶ 8 The majority stresses that Respondent, upon discovering his conversion of funds, ceased payments to himself for managing Brooks’ properties and made up the difference. However, this Court has previously stated that the ability and willingness to make restitution for one’s wrongdoing is not appropriate for consideration as a mitigating factor:
Judicial consideration of restitution as a mitigating factor in disciplinary proceedings is apt to create the impression that sanctions are proportioned in accordance with one’s ability to pay, rather than gauged against the seriousness of one’s misconduct. According significance to restitution leads to an obvious and substantial possibility of unjust discrimination. The mere circumstance of restitution is likely to be fortuitous and to depend upon conditions and circumstances that afford no reliable test of a person’s moral fitness as a lawyer. Restitution may compensate an individual complainant for the financial loss suffered; conceivably, it may partially restore the shattered faith of a-particular client. It does not significantly retard the subtle, but progressive, erosion of public confidence in the integrity of the bench and bar. Encouraging restitution in individual cases is a worthy purpose, but the application of lenient discipline needed to achieve it conflicts with the paramount goal of preserving public confidence in the entire bar.
Raskin, 1982 OK 39, ¶ 19, 642 P.2d 262 (footnotes omitted).
CONCLUSION
¶ 9 The majority opinion is not in keeping with the overall purpose of attorney disciplinary proceedings, which is to protect the public and the integrity of the legal profession. To the extent that attorney misconduct is treated as a private dispute between the lawyer and his clients, the efforts of the legal profession to preserve its integrity and to protect the general public may be substantially undercut. Raskin, 1982 OK 39, n.10, 642 P.2d 262. Further, the majority opinion’s substantial departure from precedent is manifestly not consistent with prior disciplinary proceedings, especially with regards to: 1) the mechanics of the disciplinary process; 2) the seriousness of Respondent’s numerous rule violations; and 3) the weighing of supposed mitigating factors. Given the nature of Respondent’s misconduct and the legitimacy of the OBA’s investigation and prosecution of this matter, I would suspend Respondent for ninety (90) days and assess costs in the amount of $4,439.47.

. The appropriateness of assessing costs in an attorney disciplinary proceeding hinges on whether the professional misconduct charges have been proven by clear and convincing evidence and whether the costs are related to a violation of a rule of professional conduct or disciplinary rule. State ex rel. Okla. Bar Ass’n v. McArthur, 2013 OK 73, ¶ 9, 318 P.3d 1095; State ex rel. Okla. Bar Ass’n v. Casey, 2012 OK 93, ¶ 34, 295 P.3d 1096; State ex rel. Okla. Bar Ass’n v. Albert, 2007 OK 31, ¶ 27 n.33, 163 P.3d 527. Both of those criteria have been met in this cause.
*241 In. this cause, the majority provides no justification for its failure to award any costs despite finding the Complainant proved by clear and convincing evidence that Respondent committed the vast majority of alleged violations. Presumably, the justifications are alleged mitigating faCtors and the supposedly “technical’' nature of ■ Respondent’s rule violations. As noted above, neither factor is lypically considered by this Court in making a determination concerning an award of costs.